[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-10667

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00079-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 19, 2005)**

Before BIRCH, CARNES and RONEY, Circuit Judges.

PER CURIAM:

Defendant David Taylor appeals his jury convictions and 322-month

sentence arising from several drug possession and firearm charges. He raises eight

intertwined issues on appeal: five alleged errors on the admission or exclusion of

evidence; cumulative error; insufficiency of the evidence; and a violation of *Booker/Blakely* in sentencing. We affirm.

The marijuana, crack and powder cocaine upon which the charges were based were found on Taylor during an arrest. A central contention made in Taylor's defense and on this appeal is that prosecution witness Atlanta Police Department Officer Matthew Strevel lied about finding drugs on Taylor. The district court erred, Taylor argues, in not permitting him to put in evidence of bad character and of thirteen prior complaints against Strevel of police misconduct.

A brief review of the facts shows the critical nature of Strevel's testimony before the jury. On April 6, 2002, at approximately 12:45 a.m., Atlanta Police Department Officers Randy Sheen and Matthew Strevel were dispatched to an overpass in downtown Atlanta. Officer Sheen arrived first, shone his spotlight, and saw Taylor sitting near that overpass. He parked his marked police vehicle and began walking toward Taylor. Taylor then ran from the overpass into a wooded area, and Officer Sheen followed him. Officer Sheen observed, with the assistance of a "very powerful" hand-held flashlight, Taylor "drop down a black object." Officer Sheen ultimately captured Taylor, escorting him to the road where Officer Strevel had been waiting near his separate police vehicle. Officer Sheen then walked back to the area where he had observed Taylor throw down the

2

black object, discovering a black, loaded Sig Sauer, Model P-230, .380 caliber firearm. The firearm was clean and did not appear to have been on the ground for a long time. Officer Sheen then radioed to Officer Strevel that he had found a firearm, and Officer Strevel placed Taylor under arrest for carrying a concealed weapon. Officer Strevel noticed that Taylor had a bleeding cut on his forehead. Officer Strevel testified that in searching Taylor incident to the arrest, he located marijuana, as well as individually-packaged crack and powder cocaine bags, and a black ski mask. The Georgia Bureau of Investigation Crime Laboratory tested the drugs, revealing 24.89 grams of marijuana and 8.34 grams of cocaine.

The possession of the firearm and those drugs formed the basis of the four-count indictment against Taylor: (Count 1) felon in possession of a firearm, 18 U.S.C. §§ 922(g), 924(e); (Counts 2 and 3) possession with intent to distribute cocaine and marijuana, 21 U.S.C. §§ 841, 851; and (Count 4) using and carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c).

**Argument 1: Excluding testimony and evidence regarding prior complaints against Officer Strevel.**

The day before trial, Taylor advised the district court that he intended to cross-examine Officer Strevel, a government witness, regarding prior citizens' complaints against him alleging harassment, planting evidence and brutality

3

pursuant to either Federal Rules of Evidence 404(b) or 608.  The defense provided the prosecution with the Atlanta Police Department Internal Affairs Reports, indicating the nature of the complaints against Officer Strevel and the results of those investigations. Taylor subsequently filed a very limited "Proffer of Evidence."  Taylor proffered that: (1) in Complaint No. 00-C-499, a defendant, Joseph Taylor, alleged that Officer Strevel had planted cocaine on him, kept his money and property; and (2) as stated in Internal Affairs Investigation case number 01-C-0296-UAF, Officer Strevel had been "under investigation by Internal Affairs for brutality at the time of [his] arrest."  The proffer stated nothing else.  Taylor's proffer of evidence only references one citizen complaint, Complaint No. 00-C-499, against Officer Strevel which included an allegation that Officer Strevel had "plant[ed] cocaine on [an arrestee], kept his money and property."  This complaint was determined to be "unfounded" by the Internal Affairs Division of the Atlanta Police Department.  The other complaint referenced in the proffer, No. 01-C-0296, only stated, without any explanation, that "Officer Strevel was under investigation for brutality at the time of Mr. Taylor's arrest."  All of the remaining complaints were determined to be "unfounded" by the Internal Affairs Division as well.

The government argued that because Internal Affairs had determined that all of the alleged instances regarding harassment, planting evidence and brutality were "unfounded based on lack of evidence, . . . the defendant should [not] be entitled to inquire about those instances . . .." The district court agreed ruling:

> As to the other evidence the defendant seeks to introduce for use on cross-examination or relative to bias and matters that were subject to internal affairs . . ., that evidence is excluded because [its] probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury; therefore, the jury will not be permitted to pursue these matters either by oral testimony or by documentary evidence.

Taylor contends that these thirteen complaints of police misconduct were relevant to prove that Officer Strevel was "biased," had a tendency for "untruthfulness," and thus may have planted the drugs on him during the arrest.

The district court did not abuse its discretion by denying Taylor's request to either reference or admit these thirteen complaints of police misconduct under Rules 404(b) or 608(b). Taylor's attempt to offer or reference these "unfounded" complaints into evidence at trial is similar to the failed defendants' efforts in *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001). The *Novaton* defendants attempted to cross-examine one government agent on his potential involvement in the "Miami River Cops Scandal," where that officer had been suspended with pay

for four months but was later reinstated and no criminal charges were ever brought against that agent, "although he was formally reprimanded for failing to document a conversation with an informant." 271 F.3d at 1004. Like Taylor here, the defendants had argued to the district court that cross-examination of the officer regarding this matter should be permitted because it could show the agent's bias or motive to lie. The defendants also sought to cross-examine another government agent concerning one pending investigation and one completed investigation where the same source had sent the Drug Enforcement Agency a letter alleging that the agent had stolen cocaine during a drug seizure. 271 F.3d at 1004-05.

The district court in *Novaton* held that those investigations were "'irrelevant, and even if [they were] relevant, [their] probative value is outweighed by [their] prejudice.'" 271 F.3d at 1005. In affirming the district court's evidentiary rulings, this Court reasoned that the "insertion" of one agent's involvement in the "Miami River Cops Scandal," where the agent "was thoroughly investigated in connection with that scandal, but was never charged with any crime and only received a reprimand for failing to document a conversation with an informant," was irrelevant and "any potential relevance" was substantially outweighed by the likelihood of unfair prejudice and thus was properly excluded under Federal Rule of Evidence 403. 271 F.3d at 1007.

Similarly, the *Novaton* Court also affirmed the exclusion of the "unproven allegations" that the second agent had stolen cocaine, ruling that the injection of the evidence into trial "had the obvious potential to cause serious and unfair prejudice to the government." 271 F.3d at 1007. The Court reasoned, "In light of the fact that [the agent] was cleared during the first investigation and that the second investigation concerned the same allegations from the same source, information concerning those investigations elicited during cross-examination would not have had much, if any, probative value." 271 F.3d at 1007.

Here, like *Novaton*, Taylor sought to admit or reference evidence of unproven, citizen complaints that were brought against Officer Strevel. Also like the agents in *Novaton*, there is no record evidence that Officer Strevel was disciplined for, or convicted of, planting evidence or brutalizing any arrestee. *See Novaton*, 271 F.3d at 1007. Next, even if there was evidence that Officer Strevel had actually injured arrestees in the past, that evidence would be irrelevant in this case, as this is not a civil rights case where brutality has been alleged. Taylor further failed to proffer the testimony of any witness who might testify that Officer Strevel had engaged in any of the alleged acts but instead chose to simply *refer to* Internal Affairs documents to support his theory that Officer Strevel had a history of planting evidence on arrestees and had a character for untruthfulness and racial

7

bias. It is axiomatic that the "trial court has broad discretion in determining how and why bias may be proved and what collateral evidence is material to that purpose." *United States v. Love*, 599 F.2d 107, 108 (5th Cir. 1979). Without these proffers in the record, our review of the district court's discretionary evidentiary decision to determine the existence of an abuse of discretion is impossible. *See, e.g., Love*, 599 F.2d at 109 (affirming district court's limitation of testimony on cross-examination of a government agent that another agent had allegedly planted evidence in different incident where "no offer of proof was made at that time").

But unlike *Novaton*, which involved an effort to introduce evidence solely under Rule 608(b), Taylor also attempted to admit these prior instances of "racial harassment, brutality and evidence planting" under Rule 404(b) as evidence that Officer Strevel had "racial bias" and thus had a motivation to frame Taylor and lie at trial. Rule 404(b) authorizes the admission of evidence of other wrongs to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .." Fed. R. Evid. 404(b). Taylor's arguments are trumped under Rule 404(b) for similar reasons that they were under Rule 608. *See, e.g., United States v. Farmer*, 923 F.2d 1557, 1567 (11th Cir. 1991) (stating that the word "motive" in the text of Rule 404(b) does not refer to the witness's

motive to testify falsely, and noting that "[t]he witness's motive to testify falsely . . . is merely an aspect of credibility [controlled by Fed. R. Evid. 608]") (quotation and citation omitted).

As to opinion testimony regarding Officer Strevel, the district court held, "you must show that [the witness] had an opportunity to acquire knowledge about the officer" and that "the witness's personal opinion cannot be based solely upon isolated personal contact with the officer." At trial, Taylor neither called any witnesses to testify as to their opinion about Officer Strevel's truthfulness or his reputation in the community for truthfulness, nor did he offer any proffers of evidence regarding the same. Taylor's argument that the district court erred by failing to permit witnesses to testify as to their opinion as to Officer Strevel's reputation also fails because he never called any witnesses to testify, never proffered the testimony of any witness as to his or her opinion on the truthfulness of Officer Strevel, never named the potential witnesses, and never represented to the court that he had spoken to any witnesses and could proffer what they might say. Once more, without a proffer or any record to review, the value of their testimony and the district court's ruling cannot be assessed on appeal. Accordingly, there was no abuse of discretion in these evidentiary rulings under either Rules 404(b) or 608.

The other issues raised on appeal reveal no reversible error.

**Argument 2: Excluding the hearsay testimony of Dr. Barnanda Kerrium Norwood, a hospital physician who had examined Taylor after his arrest, and was to testify that Taylor had told her that the injury to Taylor's head was caused when the arresting officers had "stepped on" him.**

There was no abuse of discretion by excluding this testimony because it was irrelevant. Taylor's statement to Dr. Kerrium Norwood during her post-arrest treatment of him was irrelevant because where or how Taylor received the injury to his head was not probative of whether or not he possessed a firearm and illegal narcotics, which was the subject of this criminal trial.

**Argument 3: Limiting the direct examination of Gloria Pittman, Taylor's sister, to exclude the background facts that she believed led to Taylor becoming homeless and living under the overpass.**

There was no abuse of discretion by limiting the testimony of Gloria Pittman, Taylor's sister, a defense witness. Although the district court permitted Pittman to testify that her brother was homeless and living under an overpass in Atlanta, as well as when he became homeless, it sustained the government's objection to restrict her from testifying about the circumstances leading to Taylor's homelessness, such as his family history and failed boxing career. The determination of the relevance of this evidence was within the broad discretion of

10

the district court. *See United States v. Nabors*, 707 F.2d 1294, 1298 (11th Cir. 1983).

**Argument 4: Permitting Calvin Jones to testify as to Taylor's jailhouse confession**.

The day before the start of trial, the government notified Taylor that it would be introducing the testimony of a federal prisoner, Calvin Jones, who had been housed with Taylor in an Atlanta pretrial detention center, for the purpose of introducing Taylor's jailhouse confession of the charged offenses. Although Jones had contacted the government agent by letter about this information six months before the start of trial, the government did not interview Jones and did not decide to call him as a witness until October 15, 2003, the same day it notified the defense. Jones testified that Taylor had confessed his charged crimes, as well as his plans to make false allegations against the police because "he was going to try to sue them."

Taylor had objected to Jones's testimony before opening arguments on the ground that the government had not notified him pursuant to Federal Rule of Criminal Procedure 16(a)'s notification procedures and that this violated "the spirit of the rule." There was no abuse of discretion in admitting this testimony because Taylor made those voluntary statements to an individual who was not a

11

government agent and the statements are thus not discoverable under Federal

Rules of Criminal Procedure 16(a)(1)(A) or (B).  Rule 16(a)(1) states:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, *in response to interrogation by a person the defendant knew was a government agent* if the government intends to use the statement at trial. . . . [and] the portion of any written record containing the substance of any relevant oral statements made before or after arrest *if the defendant made the statement in response to an interrogation by a person the defendant knew was a government agent* . . ..

Fed. R. Crim. P. 16(a)(1)(A), (B)(ii) (emphasis supplied); *see United States v.*

*Bailey*, 123 F.3d 1381, 1399 (11th Cir. 1997) ("Because Rule 16(a)(1)(A)

"requires government disclosure only of a defendant's oral statements made 'in

response to interrogations by any person *then known* to the defendant to be a

government agent,' a defendant's voluntary statements made to individuals that

the defendant did not know were government agents do not come within the ambit

of this rule.") (citation omitted).  Jones was not, at any time, a government agent.

There is no record evidence that Taylor was ever "interrogated," as required by the

Rule.

**Argument 5:  Admitting "Rule 404(b) evidence" of his prior conviction for being a felon in possession of a firearm.**

Taylor argues that the district court abused its discretion by admitting evidence of his prior conviction for being a felon in possession of a firearm because, he contends, it is "not admissible under Fed. R. Evid. 404(b)." Taylor never admitted to or stipulated to the fact that he knowingly and intentionally possessed the firearm found by Officer Sheen. The government had the burden of proving knowing possession of a firearm. To do so and satisfy the *mens rea* element of this offense, it sought admission of evidence that Taylor had knowingly possessed a firearm at another point in time. *See United States v. Jernigan,* 341 F.3d 1273, 1281 (11th Cir. 2003) (permitting admission of defendant's prior felon in possession of firearm conviction to prove "knowing possession of a firearm" element of charged offense). The district court instructed the jury of the limited use of this evidence as well. The district court did not abuse its discretion in admitting this evidence.

**Argument 6: Cumulative error.**

There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse Taylor's convictions is without merit.

**Argument 7: Sufficiency of the evidence.**

13

There was sufficient evidence to support the drug possession and distribution, as well as the firearm charges convictions. The thrust of Taylor's arguments is not that there was insufficient evidence to meet a *prima facie* case for the charged offenses but instead that the jury should not have believed the testimony of Officers Sheen and Strevel, who testified that they found a large quantity of individually-packaged drugs, consistent with distribution, on Taylor's person and a firearm in an area where they had seen Taylor "drop down a black object." Because all factual and credibility inferences are drawn in favor of the government, the jury's verdict must stand unless no reasonable factfinder could have found Taylor guilty beyond a reasonable doubt. *See United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). With these favorable credibility and factual inferences in mind, the record supports the jury's convictions.

**Argument 8:** *Booker/Blakely* **sentencing error.**

The district court did not commit *Booker/Blakely* error by enhancing Taylor's sentence based on his prior convictions. In *United States v. Shelton*, 400 F.3d 1325 (11th Cir. 2005), this Court held that a district court did not violate the Sixth Amendment by using the defendant's prior convictions to enhance his sentence. 400 F.3d at 1329 ("The Supreme Court consistently has rejected [the defendant's] argument that a district court errs when it considers prior convictions

14

in sentencing a Defendant under the Guidelines."). Because there was no dispute as to Taylor's prior convictions that were utilized by the district court to enhance his sentence, there was no error, plain or otherwise, for the district court to have increased his criminal history score based on its findings concerning prior convictions.

Although the district court did not commit a Sixth Amendment violation in sentencing Taylor, it did commit a statutory error under *Booker*. "As we stated *in Shelton*, the district court commits a statutory error by sentencing a defendant 'under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment violation.'" *United States v. Camacho-Ibarquen*, ___ F.3d ___, 2005 WL 1297236, *7 (11th Cir. June 2, 2005) (quoting Shelton, 400 F.3d at 1330–31).

As we stated above, because Taylor did not raise this argument before the district court, our review is only for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). Because the district court treated the guidelines as mandatory, it committed an error that is plain. *Shelton*, 400 F.3d at 1330–31. However, the defendant has the burden to demonstrate that the plain error affected his substantial rights. That is, he must show that there was a reasonable probability that he would have been given a lesser sentence had the guidelines been applied in an advisory rather than a mandatory fashion. *Id.* at 1331–32.

Here, Taylor has not presented any evidence that the district court would have given him a lesser sentence but for the *Booker* statutory error. Where that is the case, we have held that the defendant fails to meet his burden under the substantial prejudice prong of the plain error test. *Rodriguez*, 398 F.3d at 1300–01. Thus, the district court did not plainly err in sentencing Taylor under a mandatory guidelines scheme.

AFFIRMED.