[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 5, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15329
Non-Argument Calendar

_____

D. C. Docket No. 05-20210-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASPER MOORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 5, 2006)**

Before MARCUS, WILSON  and FAY, Circuit Judges.

PER CURIAM:

Jasper Moore appeals his conviction following a jury trial and his 210-month sentence for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Moore argues on appeal that the district court abused its discretion in admitting during Moore's trial evidence of his prior uncharged conduct of possessing a firearm. Moore also contends that his 210-month sentence was unreasonable in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm.

A federal grand jury returned an indictment, charging Moore with the above-referenced § 922(g)(1) offense. Prior to trial, the government filed two notices of its intent to rely on several prior bad acts, pursuant to Fed.R.Evid. 404(b). Moore responded by filing a motion in limine, seeking to exclude evidence of all of these acts. The government subsequently replied that it had decided to rely only on a August 20, 2004, arrest, for possession of a firearm by a convicted felon. The district court denied Moore's motion in limine, explaining, in relevant part, that the proffered evidence was relevant and admissible under Fed.R.Evid. 404(b), to demonstrate Moore's criminal intent.

At trial, Carl Baaske, a detective with the Miami-Dade Police Department, testified that, on March 1, 2005, while watching an apartment complex in Miami,

2

Florida that had been the scene of frequent drug deals he observed three persons near a dumpster, including Travis Jones, whom Detective Baaske had warned one week earlier about selling drugs, and Moore, whom Detective Baaske had not previously met. That same evening, Detective Baaske observed Jones engage in nine drug transactions, each time giving the buyer a bag containing either marijuana, cocaine, or cocaine base, in exchange for money. During these transactions, Moore either stayed within two to three feet of Jones, conversing with him, or looked up and down the nearby avenue—conduct Detective Baaske attributed to acting as a "lookout." After Detective Baaske described to other officers the three persons he had observed at the dumpster and these other officers approached the suspects, the suspects all ran away from the dumpster, with Jones running towards his mother's residence. The officers then arrested Jones and executed a search warrant for his mother's residence, during which they recovered marijuana, cocaine base, and a firearm.

Orlando Reyes, a sergeant with the Miami-Dade Police Department, also testified, stating that, after Detective Baaske informed him about these drug sales, and after he and Officer Willie McFadden approached the suspects, Moore ran through a breezeway in the complex, at the end of which the officers blocked his path. When Moore attempted to run through these officers, they grabbed him,

3

wrestled him to the ground, and handcuffed him, during which time Moore vigorously resisted them. When the officers finally were able to handcuff Moore and pull him up from the ground, Sergeant Reyes saw a firearm fall out of the left pocket of Moore's pants.[1]

The government, over Moore's renewed Rule 404(b) objection, also introduced testimony from Adrian Barazal, another detective with the Miami-Dade Police Department, that, on August 20, 2004, at about 3:00 p.m., Detectives Barazal and Octavio Tellez were on patrol in the Liberty City area of Miami, Florida, in an unmarked police vehicle, when they observed a driver fail to stop at the stop sign. When the detectives attempted to stop this vehicle by turning on their red and blue lights, they saw the driver look back at them and accelerate his vehicle, thus beginning a car chase. During this chase, Detective Barazal observed (1) the driver's head "disappear for a second and then pop back up," and (2) the driver reach across the passenger of the vehicle and throw an object out of the window. As the thrown object hit the ground, the detectives slowed their vehicle and saw that it was a revolver. The detectives, however, then resumed their chase and eventually stopped the vehicle, which Moore was driving. Upon his arrest,

---

[1] The government also produced (1) a stipulation by Moore that he previously had been convicted of a state felony; and (2) evidence showing that the firearm that fell out of Moore's pocket was an operable Star .380 caliber pistol, had six rounds of ammunition and had traveled in interstate or foreign commerce.

Moore told the detectives: "You didn't catch me with it." Detective Tellez later recovered from the side of the road a Smith & Wesson .38 caliber revolver.

The court then instructed the jury twice that it could consider this evidence of uncharged prior bad acts only for the limited purpose of determining Moore's intent as to the charged § 922(g)(1) offense, and only if it decided beyond a reasonable doubt that Moore had committed the charged offense. Moore decided not to testify or put on any evidence. The jury convicted him as charged.

Moore's presentence investigation report ("PSI") calculated that he had a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2), because the offense involved possessing a firearm and ammunition by a convicted felon who committed the offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled-substance offense. The PSI also recommended a two-level increase, pursuant to U.S.S.G. § 2K2.1(b)(4), because the firearm was stolen, and a four-level increase, pursuant to § 2K2.1(b)(5), because the firearm and ammunition were used or possessed in connection with a drug offense. However, because Moore was an armed career criminal, he was subject to (1) a 15-year mandatory minimum statutory sentence, pursuant to 18 U.S.C. § 924(e); and (2) an adjusted offense level of 33, pursuant to U.S.S.G. § 4B1.4(a) & (b)(3)(B).

With a criminal history category of V,[2] Moore had a resulting guideline range of 210 to 262 months' imprisonment. Moore's only objection to the PSI was to the four-level § 2K2.1(b)(5) enhancement.

On September 7, 2005, at sentencing, Moore renewed his objection to the § 2K2.1(b)(5) enhancement. He, however, conceded that this enhancement would not affect his offense level because, due to his status as an armed career criminal, his offense level automatically was increased to level 33. The court, nevertheless, granted Moore's objection to the § 2K2.1(b)(5) enhancement and, adopting the PSI's guideline calculations, determined that Moore's resulting guideline range was 210 to 262 months' imprisonment.

Moore then argued that his statutory mandatory minimum sentence of 15 years' imprisonment was "more than adequate" to punish him and to deter him from committing future offenses. Moore also argued that, although he had a long criminal history, this history was, at least in part, the result of the failure of the criminal justice system to rehabilitate him. The government responded that Moore's prior criminal history involved violent felony offenses, including

---

[2] Moore's PSI reflects that his criminal history category of V was based on a lengthy criminal history, including convictions for burglary with assault, robbery with a firearm, armed robbery with a firearm, attempted robbery, robbery and burglary with an assault, and a failure on Moore's part to take advantage of opportunities to rehabilitate himself. This category also was the result of Moore being an armed career criminal, pursuant to U.S.S.G. § 4B1.4(c)(1).

carjacking, with two of his offenses involving the use of firearms. The government

also contended that the evidence showed that Moore was using the firearm in the

instant offense to further drug-trafficking activity. After considering the

sentencing factors in 18 U.S.C. § 3553(a), the court determined that a sentence at

the bottom of Moore's guideline range, that is, 210 months' imprisonment, was

appropriate.

**Issue 1:** <u>**Evidence of Moore's prior uncharged conduct**</u>

Moore argues that the district court abused its discretion in admitting, as

evidence of his intent, that he had possessed a firearm as a convicted felon on

August 20, 2004, because, in not putting on a defense at trial, he had not contested

the issue of intent. Moore contends that this evidence, instead, was improperly

admitted to "bolster the credibility of" the government's witnesses.

Rule 404(b) provides in relevant part that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity
> therewith. It may, however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation, plan, knowledge,
> identity, or absence of mistake or accident . . ..

Fed.R.Evid. 404(b). Our test for admissibility of Rule 404(b) evidence is as

follows:

> First, the evidence must be relevant to an issue other than the
> defendant's character; Second, the act must be established by

sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.[3]

United States v. Matthews, 431 F.3d 1296, 1310-11 (11th Cir. 2005) (quotation omitted).  The district court's decision to admit or exclude such evidence is reviewed for abuse of discretion.  Id.

In applying the first element of this Rule 404(b) test—the only element Moore is challenging on appeal—we have explained that the government has the burden of proving knowing possession of a firearm to convict a defendant of a § 922(g) offense.  United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir.), cert. denied, 126 S.Ct. 768 (2005).  Thus, we concluded in Taylor that, in the absence of the defendant's admission of this intent, and in light of the district court's limiting instruction to the jury, the court did not abuse its discretion in admitting evidence of a prior conviction for being a felon in possession of a firearm under Rule 404(b).  See id.

Furthermore, to the extent Moore has cited to our prior decision in United States v. Matthews, 411 F.3d 1210, 1225 (11th Cir. 2005), vacated and superseded

---

[3]  Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See Fed.R.Evid. 403.

on rehearing by <u>United States v. Matthews</u>, 431 F.3d 1296 (11th Cir. 2005), in which we determined that the admission of Rule 404(b) evidence was improper when the defendant failed to mount an affirmative defense and, thus, squarely challenge the issue of intent, this decision has been vacated.[4]  Indeed, in our superseding opinion in <u>Matthews</u>, we explained that a defendant's plea of not guilty, alone, "without an accompanying affirmative removal," leaves the element of intent at issue.  See <u>Matthews</u>, 431 F.3d at 1311.

Similar to the facts in <u>Taylor</u>, the charge at issue here was a § 922(g)(1) offense; the government, therefore, had the burden of proving that Moore knowingly possessed a firearm.  See <u>Taylor</u>, 417 F.3d at 1182.  Although Moore is contending that he did not testify or present any evidence, he also has not cited to evidence in the record showing that he entered into a stipulation relating to, or admitted, this intent.  Moreover, the challenged Rule 404(b) evidence here occurred in August 2004, within seven months of the charged conduct in March 2005.  See also <u>United States v. Butler</u>, 102 F.3d 1191, 1195-96 (11th Cir. 1997) (holding that a three-year-old prior conviction for possession of cocaine for personal use was relevant and admissible for purposes of demonstrating the

_____

[4]  In citing to our prior decision in <u>Matthews</u>, Moore notes that it has been superseded and vacated.  He, however, relies on it, among other authorities, for the proposition that, where intent is at issue, and the act charged "is not equivocal," proof of other offenses will not be permitted.

9

defendant's intent in the charged conspiracy for possession with intent to distribute).

Thus, instead of constituting improper character evidence, this evidence was relevant as evidence of Moore's knowledge and intent. See Matthews, 431 F.3d at 1311; see also Taylor, 417 F.3d at 1182. Additionally, the court properly instructed the jury twice that it could consider this evidence of uncharged prior bad acts only for the limited purpose of determining Moore's intent as to the charged § 922(g)(1) offense, and only if the jury decided beyond a reasonable doubt that Moore had committed the charged offense. We, therefore, conclude that the district court did not abuse its discretion in admitting this Rule 404(b) evidence.

**Issue 2:       Whether Moore's 210-month sentence was reasonable**

Moore also argues on appeal that his 210-month sentence was unreasonable because, although this sentence was at the bottom of his guideline range, his length of incarceration exceeded his "culpability for this crime." Moore contends that, although he should have been subject to a longer sentence for being a "recidivist offender," his guideline range in the absence of his criminal history only would have been 21 to 27 months' imprisonment, and his substantially increased guideline range for being an armed career offender of 210 to 262 months' imprisonment, which represented a "10-fold increase," far exceeded a reasonable

guideline range. Citing to <u>State Farm Mut. Auto Ins. Co. v. Campbell</u>, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), Moore also argues that his sentence was in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[5]

Prior to Moore's sentencing hearing, the Supreme Court issued its decision in <u>Booker</u>, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. <u>Booker</u>, 543 U.S. at 232-35, 125 S.Ct. at 749-51.[6] In a second and separate majority opinion, the <u>Booker</u> Court explained that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including <u>de novo</u> review of

---

[5]The Supreme Court discussed in <u>State Farm</u> that, "[w]hile States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards." <u>See</u> <u>State Farm Mut. Auto Ins. Co.</u>, 538 U.S. at 416, 123 S.Ct. at 1519. The <u>State Farm</u> Court ultimately concluded that an award of $145 million in punitive damages against a defendant, where full compensatory damages only were $1 million, was excessive and in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. <u>See id.</u> at 412, 123 S.Ct. at 1517.

[6] The Supreme Court in <u>Booker</u> explicitly reaffirmed its rationale in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>See</u> <u>Booker</u>, 543 U.S. at 244, 125 S.Ct. at 756.

departures from the applicable guideline range)—thereby effectively rendering the federal guidelines advisory only. Id. at 258, 125 S.Ct. at 764. Thus, the Booker Court concluded that a defendant's guideline range is now advisory; it no longer dictates his final sentence, but, instead, is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a).[7] Id. at 259-60, 125 S.Ct. at 764-65.

We review the sentence imposed by the district court for reasonableness. United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005). When we review for reasonableness, our review is deferential. Id. at 788. We do not, as the district court did, determine the exact sentence to be imposed. Id. Moreover, the party who is challenging the sentence "bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in [§ 3553(a)]." Id.

---

[7] The relevant sentencing factors enumerated in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

When the court considered the factors of § 3553(a), it was not required to discuss each of them. See United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005) (explaining "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the section 3553(a) factors or to discuss each of the section 3553(a) factors"). Regardless, in the instant case, the court stated that it had taken into account Moore's advisory guideline range, as well as the statutory sentencing factors in § 3553(a), including the need for the sentence in this case to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment and adequate deterrence, and to protect the public. See 18 U.S.C. § 3553(a)(2)(A) (the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense); 18 U.S.C. § 3553(a)(2)(C) (the need for the sentence imposed to protect the public from further crimes of the defendant); 18 U.S.C. § 3553(a)(3) (the kinds of sentences available).

Moore's PSI also reflects that he had a lengthy criminal history and had not taken advantage of past opportunities to rehabilitate himself. See 18 U.S.C. § 3553(a)(1) ("the history and characteristics of the defendant"). Thus, Moore has failed to show that the court did not consider § 3553(a)'s sentencing factors, or that his 210-month sentence, which was at the bottom end of his guideline range of 210

13

to 262 months' imprisonment, was unreasonable. See Talley, 431 F.3d at 788 (explaining that, although a sentence within a defendant's guidelines range is not per se reasonable, ordinarily we "would expect a sentence within the [g]uideline range to be reasonable").

Finally, to the extent Moore is contending for the first time on appeal that the district court committed reversible error in relying on the "10-fold" increase in his guideline range due to his recidivism, he is analogizing to the Supreme Court's limits on disparities between punitive and compensatory damage awards in civil cases. Our review of this newly raised argument, however, only is for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.) (reviewing a newly raised Booker challenge for plain error), cert. denied, 125 S.Ct. 2935 (2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" Id. (quotation omitted). "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quotation omitted).

"[A]n error cannot meet the 'plain' requirement of the plain error rule if it is not 'clear under current law.'" United States v. White, 416 F.3d 1313, 1319 (11th

14

Cir. 2005) (quotation omitted). "[W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." Id. (quotation omitted). Here, neither the Supreme Court nor this Court has addressed the argument that the Supreme Court's limits on disparities in civil awards should be applied in the criminal-sentencing context.[8] Thus, even if we were to conclude that error occurred, it was not "plain."

Accordingly, we conclude that the district court did not abuse its discretion in admitting evidence of Moore's prior uncharged conduct of possessing a firearm. Additionally, Moore has failed to show that his 210-month sentence was unreasonable. We, therefore, affirm his conviction and sentence.

**AFFIRMED.**

---

[8] Indeed, the Supreme Court explained in State Farm that, "[a]lthough these [punitive damage] awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concern over the imprecise manner in which punitive damages systems are administered." See State Farm Mut. Auto Ins. Co., 538 U.S. at 417, 123 S.Ct. at 1520.