[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12512

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TAURI BENJAMIN RIVAS NUNEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cr-00002-PGB-EJK-2

_____

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Tauri Benjamin Rivas Nunez appeals his conviction and 135-month prison sentence for aiding and abetting Hobbs Act robbery and aiding and abetting the possession of a firearm in furtherance of a crime of violence. The charges stem from the robbery of a T-Mobile store. On appeal, Rivas Nunez argues that the district court abused its discretion by admitting as evidence WhatsApp[1] messages discussing his involvement in the armed robbery of an AT&T store several days before the charged offense. He also contends that there was insufficient evidence for a reasonable jury to conclude that he knew one of his codefendants was armed. Finally, he argues that his sentence is substantively unreasonable. After careful review, we affirm in all respects.

## I.    Background

### A.    The Indictment and Codefendants' Guilty Pleas

A federal grand jury indicted Rivas Nunez on two counts. Count One charged that Rivas Nunez, along with codefendants Victor Hugo Castillo Vallejo, Cristian Manuel Rodriguez Nunez,

---

[1] WhatsApp is an American company that provides messaging, Internet calling, and other services through a smartphone application. Information for Law Enforcement Authorities, WHATSAPP, https://faq.whatsapp.com/en/general/26000050/?category=5245250 (last visited May 11, 2022).

and Luis Miguel Valdez Mendez, aided and abetted the armed robbery of a T-Mobile store in Oviedo, Florida, on August 10, 2019, in violation of 18 U.S.C. §§ 1951(a) and (b) and 2. Count Two charged that Rivas Nunez, Castillo Vallejo, and Rodriguez Nunez aided and abetted one another in possessing a firearm in furtherance of that robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Castillo Vallejo and Valdez Mendez pleaded guilty pursuant to written plea agreements. They received total sentences of 90 months and 60 months, respectively.

## B.    Motion in Limine

Before Rivas Nunez's case proceeded to trial, he filed a motion in limine to exclude from evidence various statements and WhatsApp messages about his alleged involvement in the robbery of an AT&T store in Orlando on August 6, 2019—four days before the T-Mobile robbery in Oviedo. As to the statements, Castillo Vallejo told law enforcement that Rivas Nunez conducted surveillance on the AT&T store before that robbery, but that Rivas Nunez did not enter the store during the robbery because he knew an employee there. As to the WhatsApp messages, Rodriguez Nunez messaged Castillo Vallejo on August 6, saying that they should rob a local AT&T store using guns and that he and Rivas Nunez would tie up the employee. Rodriguez Nunez suggested that Rivas Nunez could wear a mask so that the employee, who was his sister-in-law, would not recognize him. The same day, Castillo Vallejo reported that Rivas Nunez was unable to help them. But later that afternoon, Castillo Vallejo sent Rodriguez Nunez a message

saying that Rivas Nunez was on his way to pick up Rodriguez Nunez. At 2:31 p.m., Rodriguez Nunez sent a message saying that he was waiting for Rivas Nunez. At 4:43 p.m., the AT&T store called 911 to report a robbery. At 6:20 p.m. and 6:41 p.m., Castillo Vallejo and Rodriguez Nunez exchanged messages listing abbreviations for items taken in the robbery.

The next day, August 7, Castillo Vallejo and Rodriguez Nunez discussed that Rivas Nunez had attempted to call them. Rivas Nunez wanted to do surveillance on another cell phone store. Castillo Vallejo said that Rivas Nunez had made easy money as the getaway driver for the AT&T robbery, and that the men should make him go inside the store for the next robbery.

The district court denied Rivas Nunez's motion to exclude the evidence. The court found that the statements and WhatsApp messages were not barred as hearsay because they were made during and in furtherance of a conspiracy, which is an exclusion to the ban on hearsay. *See* Fed. R. Evid. 801(d)(2)(E). And although evidence of a prior crime or wrong is not admissible to prove a person's propensity for wrongdoing, Fed. R. Evid. 404(b), the court held that the WhatsApp messages were admissible as non-propensity evidence of Rivas Nunez's identity, as well as motive, opportunity, preparation, planning, and a pattern of criminal activity. The court noted that the AT&T and T-Mobile robberies were "perpetrated in strikingly similar ways," and that the messages were relevant to proving Rivas Nunez's identity since he was masked during the T-Mobile robbery. The court added that the messages were

also admissible because evidence of the AT&T robbery was inextricably intertwined with evidence of the charged offense.

## C.    Trial and Post-Trial Motions

Trial began on May 10, 2021. From the outset, Rivas Nunez conceded his guilt as to count one of robbery, but disputed count two on the basis that he did not know that any of his codefendants were armed.

The government, in its case in chief, called as witnesses the employees who were working at the T-Mobile store when it was robbed on August 10. One employee, Joshua Lopez, testified that he saw three men enter the store, each with his face covered. One of them—alleged to be Rivas Nunez—grabbed Lopez and put him in a chokehold while another—alleged to be Rodriguez Nunez—took Lopez's co-worker to the back of the store. Lopez had difficulty breathing and asked his assailant to loosen his grip. The man loosened his grip briefly to open the cash register, but then resumed a tight chokehold while waiting for his partner to finish in the back room. After the men took electronic devices and money, they left through the front door.

A key government witness the next day was Castillo Vallejo. He testified that Rodriguez Nunez had planned the AT&T robbery and had spoken about it with Castillo Vallejo and Rivas Nunez on August 6. Rivas Nunez knew the AT&T employee who would be working at the store because she was a cousin of one of his ex-girlfriends, Castillo Vallejo testified. Rivas Nunez also recruited

someone named Tato to help with the robbery. Before the AT&T robbery, Castillo Vallejo met Rodriguez Nunez and gave him a weapon to use in the robbery, passing the weapon through the window of his car. Rivas Nunez and Tato were present at that time, although Castillo Vallejo could not remember where they were standing relative to the gun. Castillo Vallejo said the three men—Rodriguez Nunez, Rivas Nunez, and Tato—"needed the weapon in order to commit the [AT&T] robbery."

Four days later was the T-Mobile robbery. Castillo Vallejo explained that the men used two vehicles for the robbery to confuse law enforcement. On the way to the robbery, Rivas Nunez drove a red KIA Optima, while the rest followed in a white GMC Yukon. Castillo Vallejo recalled that, again, he gave Rodriguez Nunez his gun to use in the robbery. Although he was not sure when he gave Rodriguez Nunez the gun, he thought he did so while sitting in the white Yukon in the T-Mobile parking lot. Castillo Vallejo was seated in the back seat on the driver's side and handed the gun over the center console to Rodriguez Nunez, who sat in the front seat. It was possible for anyone sitting in the vehicle to see the transfer of the firearm. As to the execution of the T-Mobile robbery, the government entered surveillance videos into evidence, and Castillo Vallejo identified Rodriguez Nunez and Rivas Nunez as the men shown robbing the store. The surveillance videos appeared to show Rodriguez Nunez lifting his shirt to show a T-Mobile employee his gun while in the front of the store. And

when Rodriguez Nunez took the employee to the back of the store, he removed the gun from his waist and held it in his hand.

On cross-examination, Castillo Vallejo was asked whether he had shown Rivas Nunez the weapon before the T-Mobile robbery. Castillo Vallejo testified that he "never said" that he gave Rodriguez Nunez the gun in Rivas Nunez's presence before the T-Mobile robbery. He was unable to recall whether Rivas Nunez—who had driven to the store in the KIA Optima—was present when the gun was transferred in the Yukon. Castillo Vallejo testified that he was not sure whether Rivas Nunez knew about the gun or not.

The next witness up after Castillo Vallejo was Hannah Scott, an AT&T employee who was present for the August 6th robbery. She testified, in relevant part, that she could see one of the defendants had a handgun sticking out of his waistband. Although he never took it out, she said that "[i]t was clearly a handgun."

The government's final two experts focused their testimony on forensic evidence. Nelson Tai, a digital forensics investigator in the Seminole County Sheriff's Office, testified to the following. Sometime in 2019 he conducted a forensic examination of Castillo Vallejo's cell phone. The examination revealed 147 WhatsApp communications between Castillo Vallejo and Rivas Nunez between August 2 and August 10, 2019. 21 of those communications were transmitted on August 6, while 23 were transmitted on August 10.

Next, Vivian Lack, an FBI translator, testified that she translated a series of WhatsApp audio and voice messages between Rodriguez Nunez and Castillo Vallejo sent between August 6 and 10. At 12:14 p.m. on August 6, Castillo Vallejo sent Rodriguez Nunez a message asking him if he could recruit people to go "to the store for the things." He said that Rivas Nunez's sister-in-law worked at the AT&T store and suggested that they could "tie her by her feet and hands" and "get all that stuff." The two men discussed who would enter the store and who would remain in the car. At one point, Rodriguez Nunez sent an audio message saying that Castillo Vallejo would drive the car and wait outside while Rodriguez Nunez and Rivas Nunez entered wearing masks. Rodriguez Nunez asked Castillo Vallejo to talk to Rivas Nunez and propose that he go in the back room during the robbery, while Rodriguez stayed in the front "with the heat." Castillo Vallejo, apparently after speaking with Rivas Nunez, reported that Rivas Nunez said he could not go into the store but was "calling some people."

Later that day, Castillo Vallejo texted Rodriguez Nunez saying that Rivas Nunez was coming over to pick him up. Rivas Nunez was about 30 minutes away. Rodriguez Nunez said that they had to leave for AT&T immediately to avoid traffic. Several hours later, Castillo Vallejo sent messages listing the names of cell phone models and accessories. On August 7, Castillo Vallejo sent an audio message to Rodriguez Nunez saying that Rivas Nunez wanted to "plan again."

After the government rested its case, Rivas Nunez moved for a judgment of acquittal on the basis that Castillo Vallejo testified that he did not know if Rivas Nunez knew about the firearm. He argued that Castillo Vallejo had no explanation for how Rivas Nunez would have seen him hand the gun to Rodriguez Nunez in the Yukon when Rivas Nunez had driven the KIA to the T-Mobile store.

The court denied Rivas Nunez's motion. Agreeing with the government's view of the evidence, the court found that Rivas Nunez did not check on Rodriguez Nunez when he was alone in the back room, suggesting that he knew Rodriguez Nunez would be safe because he was armed. Further, the court said, T-Mobile surveillance cameras showed that Rodriguez Nunez lifted his shirt to reveal a firearm, and a reasonable jury could conclude that Rivas Nunez saw the gun at this point. Even if this was the first time Rivas Nunez saw the gun, the court reasoned, the defendants had not yet obtained the phones, and Rivas Nunez had ample opportunity to leave before the robbery was completed.

The defense then rested its case. Before closing arguments, Rivas Nunez renewed his motion for a judgment of acquittal. He argued that the evidence indicated that he did not see the gun until Rodriguez Nunez revealed it to the T-Mobile employee, and that, by that point, he did not have a reasonable opportunity to abandon the robbery. The court denied his renewed motion. After two and a half hours of deliberation, the jury found Rivas Nunez guilty as to both counts.

Again, Rivas Nunez renewed his motion for judgment of acquittal and requested a new trial in the alternative. He also renewed his objection to the court's admission of evidence of the AT&T robbery. The district court denied all of Rivas Nunez's motions.

### D.    Sentencing

Before sentencing, Rivas Nunez filed a memorandum asking for leniency and arguing that his sentence should be proportional to the sentences of Castillo Vallejo and Valdez Mendez. Rivas Nunez expressed remorse for his actions and argued that he was unlikely to recidivate.

A Presentence Investigation Report (PSI) determined that the base offense level for aiding and abetting Hobbs Act robbery is 20 points, based on U.S.S.G. § 2B3.1(a). The PSI applied a two-level increase because Rivas Nunez physically restrained Lopez to facilitate the commission of the offense. The result was a total offense level of 22 for count one. With a criminal history category of I, the PSI calculated the guidelines range at 41 to 51 months' imprisonment on count one, plus a mandatory 84 month consecutive term of imprisonment on count two. The recommended advisory guidelines range for both offenses, thus, was 125 to 135 months. Rivas Nunez raised objections to parts of the PSI, but the district court overruled those objections and adopted the PSI's advisory range.

Rivas Nunez's counsel argued at the sentencing hearing for a sentence proportional to Castillo Vallejo's and Valdez Mendez's. Counsel argued that Rivas Nunez showed compassion during the T-Mobile robbery. The thrust of the argument was that, although Rivas Nunez placed Lopez in a chokehold, he loosened his grip to allow Lopez to breathe. Rivas Nunez took the stand on his own behalf and asked for forgiveness and leniency, stating that he made a mistake. The district court, however, imposed a sentence of 51 months for count one and 84 months for count two, for a total of 135 months.

## II.     Discussion

Our discussion divides into three parts. First, we address the evidentiary issues Rivas Nunez raises on appeal. Second, we address the sufficiency of the evidence supporting the jury's verdict. Third, we address whether Rivas Nunez's sentence was substantively reasonable.

## A.     Evidentiary Issues

Rivas Nunez argues that the district court should not have allowed at trial the WhatsApp messages and voicemails related to the AT&T robbery that occurred four days before the T-Mobile robbery at the center of this case. Our discussion of the admissibility of evidence breaks into two subsections. First, we discuss whether the evidence was inadmissible hearsay. Second, we discuss whether the evidence was improperly admitted to show Rivas Nunez's propensity to engage in armed robberies.

We review a district court's rulings on admission of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). We review the district court's factual findings that a statement was made by a co-conspirator in furtherance of a conspiracy under Rule 801(d)(2)(E) under the clearly erroneous standard. *United States v. Hough*, 803 F.3d 1181, 1193 (11th Cir. 2015).

### 1.    Hearsay

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is not hearsay, however, if it was made by co-conspirators during the course and in furtherance of a conspiracy. Fed. R. Evid. 801(d)(2)(E). For a statement to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the declarant made the statement during the course of and in furtherance of the conspiracy. *United States v. Christopher*, 923 F.2d 1545, 1549–50 (11th Cir. 1991). In analyzing these conditions, the district court may rely on information provided by the co-conspirator's proffered statement, as well as independent external evidence. *See United States v. Byrom*, 910 F.2d 725, 735–36 (11th Cir. 1990).

The first two prongs are easily satisfied here. The evidence supported the district court's finding that Rivas Nunez participated

in a conspiracy to rob AT&T. Much of that evidence came from the testimony of Castillo Vallejo. He testified that he communicated with Rivas Nunez about the AT&T robbery beforehand. In fact, he testified that the co-conspirators chose this particular AT&T store because Rivas Nunez knew the woman working there and believed that she would be alone. According to Castillo Vallejo, Rivas Nunez recruited Tato to help with the robbery. And Castillo Vallejo testified that Rivas Nunez participated in the robbery as the getaway driver.

Forensic evidence also supported the district court's finding. Forensics investigator Tai testified that Castillo Vallejo and Rivas Nunez communicated via WhatsApp 147 times between August 2 and August 10, including 21 times on August 6. And FBI translator Lack testified about numerous WhatsApp messages between Castillo Vallejo and Rodriguez Nunez referencing Rivas Nunez's involvement in the AT&T robbery. For example, one message stated that Rivas Nunez was familiar with the AT&T store, another indicated that Rivas-Nunez was "calling some people" to help with the robbery, and two messages indicated that Rivas Nunez was on his way to pick up Rodriguez Nunez. Given Castillo Vallejo's testimony, the call log, and the contents of the WhatsApp messages, there was sufficient proof to enable a jury to determine by a preponderance of the evidence that Rivas Nunez was involved in a conspiracy to rob AT&T with Castillo Vallejo and Rodriguez Nunez.

And on the third prong, the district court did not clearly err when it found that the WhatsApp messages were sent during and in furtherance of the conspiracy. Though Rivas Nunez argues that the crucial WhatsApp communications between Castillo Vallejo and Rodriguez Nunez were made before Rivas Nunez became a member of any conspiracy, that is not the case. The earliest message admitted into evidence was sent at 12:14 p.m. on August 6, in which Castillo Vallejo proposed robbing the AT&T store because Rivas Nunez's sister-in-law worked there. According to the communications, Rivas Nunez had told his co-conspirators that the store would be an ideal target because the store employee would be working alone. Accordingly, the district court did not clearly err in finding that Rivas Nunez had already committed to being a member of the conspiracy to rob AT&T by the time Castillo Vallejo texted Rodriguez Nunez on August 6.

Because all three prongs are satisfied, we find that the district court did not abuse its discretion by admitting the WhatsApp messages as statements of a co-conspirator in furtherance of a conspiracy. *See Christopher*, 923 F.2d at 1549–50.

## 2.    Propensity Evidence

Extrinsic evidence of any crime, wrong, or prior act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1). We have also explained that evidence of uncharged conduct is intrinsic rather than extrinsic, and thus outside the scope of Rule 404(b) when it is "part of the same

scheme or series of transactions and uses the same *modus operandi* as the charged offense[]." *United States v. Horner,* 853 F.3d 1201, 1214 (11th Cir. 2017). The government argues that the district court correctly admitted evidence of the AT&T robbery because it was inextricably intertwined with the T-Mobile robbery. On this point, the government emphasizes that the robberies occurred only four days apart, thus constituting the same scheme or series of transactions, and that they involved the same modus operandi: multiple robbers entering a store, one robber brandishing a firearm and directing an employee to place cell phones and electronic de-vices into containers, taking cash, and then leaving with the stolen electronics and cash. Rivas Nunez counters that the robberies were separate and that the similarities between the two occurrences were not striking enough to show a modus operandi.

Even if Rivas Nunez is correct on this point, however, we can affirm for any reason supported by the record. *United States v. Hall,* 714 F.3d 1270, 1271 (11th Cir. 2013). And the government offers an alternative basis on which the evidence could have been properly admitted. Extrinsic evidence of a crime, wrong, or prior act may be admissible to prove "motive, opportunity, intent, prep-aration, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For such evidence to be admis-sible, it must satisfy a three-part test: (1) the evidence is relevant to an issue other than the defendant's character; (2) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the act; and (3) the probative value of the

evidence is not substantially outweighed by undue prejudice, as established in Federal Rule Evidence 403. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Here, on the first prong, evidence of the AT&T robbery was likely admissible to show Rivas Nunez's knowledge that Rodriguez Nunez would be armed in the T-Mobile robbery. If Rivas Nunez knew that Rodriguez Nunez used a firearm in the AT&T robbery, the jury could infer that he would have expected Rodriguez Nunez to do the same in the T-Mobile robbery just four days later. *See* Fed. R. Evid. 404(b)(2); *cf. United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (per curiam) (evidence that defendant had a prior conviction for being a felon in possession of a firearm was admissible to show that he knowingly possessed a firearm in the instant case). And on the second prong, there was sufficient evidence to prove by a preponderance of the evidence that the extrinsic act occurred. Castillo Vallejo testified to the robbery as well as Rivas Nunez's involvement, and the government produced communications indicating the same. On the third prong, evidence about the AT&T robbery was highly probative of whether Rivas Nunez knew that Rodriguez Nunez intended to carry a firearm at the T-Mobile robbery, an element of the only count that Rivas Nunez contested at trial. And although the evidence was prejudicial as well, the district court instructed the jury not to use the evidence to assess Rivas Nunez's propensity to commit crimes. We thus cannot say that the evidence's prejudice "substantially outweigh[ed]" its probative value. Accordingly, we find that the

district court did not abuse its discretion in admitting evidence of the AT&T robbery.

### B.    Sufficiency of the Evidence

Rivas Nunez argues next that there was insufficient evidence to support the jury's finding that he knew his codefendant would use a gun in the T-Mobile robbery.  When a defendant claims that the evidence was insufficient to support the jury's verdict, we conduct a de novo review, viewing the evidence in the light most favorable to the government and resolving all reasonable inferences in favor of the verdict. *United States v. Foster*, 878 F.3d 1297, 1303–04 (11th Cir. 2018).  A jury's guilty verdict must be affirmed unless there is no reasonable construction of the evidence from which the jury could have found the defendant guilty beyond a reasonable doubt. *Id.* at 1304.  A jury is free to choose among reasonable constructions of the evidence, so it is unnecessary that the evidence exclude every reasonable theory of innocence or be wholly inconsistent with every conclusion except that of guilt. *Id.*

Here, at a minimum, Castillo Vallejo's testimony provided sufficient evidence that Rivas Nunez knew Rodriguez Nunez used a gun during the AT&T robbery.  Castillo Vallejo testified that Rivas Nunez was present when he met with Rodriguez Nunez to hand off the weapon prior to that robbery.  And, as explained above, if Rivas Nunez knew that Rodriguez Nunez used a weapon in the AT&T robbery, the jury could have inferred that he knew Rodriguez Nunez would do the same in the T-Mobile robbery, only four days later. *Cf. Taylor*, 417 F.3d at 1182.  There was thus

sufficient evidence on which to base a guilty verdict, and we affirm in this regard.

## C.    Sentencing

Finally, Rivas Nunez argues that his sentence was substantively unreasonable. Specifically, he argues that his sentence was not proportional to those of similarly situated codefendants Castillo Vallejo and Valdez Mendez. He also argues that he showed compassion by loosening the chokehold on Lopez, the store clerk, when he had trouble breathing. The district court rejected that argument based in part on the transcript of Lopez's testimony. Lopez testified that Rivas Nunez loosened the chokehold only to take money from the cash register. Rivas Nunez complains about the district court's reliance on the trial transcript, saying that he could not appropriately respond because he lacked access to the transcript.

We review the reasonableness of a sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). The party challenging the sentence bears the burden of demonstrating that it is unreasonable in light of the record, the factors listed in 18 U.S.C. § 3553(a), and the substantial deference afforded sentencing courts. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). We will vacate a lower court's sentence only when we have a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors," such that the sentence "lies outside the range of reasonable sentences." *United States v. Irey*, 612 F.3d 1160, 1189

(11th Cir. 2010) (en banc), 612 F.3d at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).  The factors delineated in § 3553(a) include the seriousness of the offense, the promotion of respect of the law and just punishment, the protection of the public, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities among similar defendants.  18 U.S.C. § 3553(a)(1)–(6).  The district court need not weigh all the factors equally and can weigh any factor or combination of factors more heavily than the guideline range.  *Rosales-Bruno*, 789 F.3d at 1259.  In making its decision, the district court may consider any relevant information with sufficient indicia of reliability.    U.S.S.G. § 6A1.3(a).

When addressing whether a district court has created an unwarranted sentencing disparity among defendants who have committed comparable or less egregious offenses, we conduct a fact-specific comparison between the appellant and other defendants. *Irey*, 612 F.3d at 1219–21.  However, a disparity between the sentences imposed on codefendants is generally not a basis for relief on appeal.  *United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015).  We have upheld varied sentences between codefendants convicted as part of the same conspiracy solely because some defendants pleaded guilty and others did not.  *Id.*

Here, Rivas Nunez has not shown that his sentence is substantively unreasonable because, even if he could make a cognizable claim based on a disparity between his sentence and those of

his codefendants, he and his codefendants were not similarly situated. Castillo Vallejo pleaded guilty and provided substantial testimony on behalf of the prosecution at Rivas Nunez's trial. *Id.* And as the district court noted, Valdez Mendez was never charged with a firearm offense and pleaded guilty to the robbery charge. Therefore, the Rivas Nunez has not shown a disparity between himself and similarly situated codefendants.

The argument that the district court improperly relied on the trial transcript is also without merit. Rivas Nunez brought up arguments about the chokehold at sentencing and was present at trial when Lopez testified about it. Sentencing courts may rely on any information with sufficient indicia of reliability, including evidence admitted at trial. U.S.S.G. § 6A1.3.(a). Therefore, we find no error in the district court's reliance on the transcript.

Because the district court did not err in its reliance on the trial transcript, nor in imposing a higher sentence on Rivas Nunez than on his codefendants, we uphold the sentence as substantively reasonable.

**AFFIRMED.**