[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13442
Non-Argument Calendar
_____

D.C. Docket No. 98-08160-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK KEITH WHITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 14, 2005)**

Before CARNES, MARCUS and FAY, Circuit Judges

PER CURIAM:

Mark Keith White appeals his sentence of 12 months' imprisonment and 2 years' supervised release, which the district court imposed after determining that White had violated the terms of his original supervised release. White argues on

appeal that this sentence violated his rights in light of <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and <u>United States v. Booker</u>, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm White's sentence.

A federal grand jury returned an indictment, charging White and other codefendants with conspiracy to commit theft of goods in interstate commerce, in violation of 18 U.S.C. §§ 371, 659 ("Count 1"); and theft of goods in interstate commerce, in violation of 18 U.S.C. §§ 2, 659 ("Count 2"). Following trial, a jury convicted White of both of these offenses. In November 1999, the district court sentenced White to 37 months' imprisonment and 3 years' supervised release, with conditions of release including that he refrain from committing further criminal offenses and not illegally possess a controlled substance. On direct appeal, White only challenged the sufficiency of the evidence, some of the court's evidentiary rulings, and the court's denial of his request for an adjustment in his guideline offense level for his minor role in the offense. We affirmed White's convictions and sentence.

In April 2001, White's three-year term of supervised release commenced. In March 2004, the government charged White with violating a term of his supervised release by being arrested for committing the state offenses of

(1) possession with intent to sell cocaine, and (2) selling cocaine within 1,000 feet of a convenience store. In April 2004, at White's preliminary hearing on these violations, he admitted to possessing drugs, without conceding that he intended to sell the drugs. Absent any objections, the court accepted White's admission and found him guilty of violating his supervised release.

On June 25, 2004, at sentencing on these violations, the probation officer proffered that White's state arrest had involved the sale of $1,000 worth of cocaine base to a confidential informant, which was a Grade A violation, with a resulting recommended guideline range of 15 to 21 months' imprisonment, pursuant to U.S.S.G. § 7B1.4(a).[1] White again admitted to violating a condition of his supervised release, but he argued that his admission to possessing the drugs only supported a finding that he committed a Grade B violation and, thus, had a § 7B1.4(a) recommended guideline range of only 6 to 12 months' imprisonment.

Agreeing with White that the offense was a Grade B violation, the court explicitly discussed the factors that it had considered, pursuant to 18 U.S.C. § 3553©), in determining what sentence to impose. In doing so, the court

---

[1] The criminal history category to be used in determining the applicable advisory guideline range of imprisonment in U.S.S.G. § 7B1.4(a) is the category determined at the time the defendant originally was sentenced to the term of supervision. See U.S.S.G. § 7B1.4, comment. (n.1). White's presentence investigation report from his original sentencing hearing reflects that he fell within criminal history category II.

acknowledged that the probation officer had stated that White had stable employment, and that there was no evidence that White was using drugs. On the other hand, the court noted that the offenses forming the basis for his new arrest were serious, and that White had a "history of involvement with drugs." The court also stated that "Mr. White needs to understand that he simply cannot have involvement with drugs. Drugs, I think, are what are a problem to him." The court ultimately revoked White's term of supervised release and sentenced him, without objection, to 12 months' incarceration, to be followed by 24 months' supervised release.

In a brief White filed prior to the Supreme Court issuing its decision in Booker, he argues for the first time that the district court violated his rights under the Fifth and Sixth Amendments to the United States Constitution, in light of the Supreme Court's decision in Blakely, by sentencing him to additional terms of imprisonment and supervised release after determining that he violated a term of his supervised release. White specifically contends that, assuming the Supreme Court held that Blakely was applicable to the federal guidelines, the law governing the imposition and revocation of supervised release, which was part of the "package" of sentencing reforms enacted in 1984, also is unconstitutional. White, thus, argues that (1) his original term of supervised release was unconstitutionally

imposed and could not support the violation at issue in this case, and (2) the court's ultimate sentence following revocation of supervised release was unconstitutional.

As a preliminary matter, to the extent White is attempting to challenge the district court's original imposition of three years' supervised release, a defendant may not challenge, for the first time on appeal from the revocation of supervised release, his sentence for the underlying offense. United States v. Almand, 992 F.2d 316, 317-18 (11th Cir. 1993). We explained in Almand that "[a] sentence is presumed valid until vacated under [28 U.S.C. § 2255]." Id. at 317. We also have determined that the Supreme Court's decisions in Blakely and Booker are not retroactively applicable to cases on collateral review. Varela v. United States, 400 F.3d 864, 867-68 (11th Cir. 2005). The scope of our review, therefore, is limited to White's challenge of the court's sentence following the revocation of his supervised release.

Because White did not raise his Blakely/Booker objections in the district court, we review them only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.) (reviewing a newly raised Blakely/Booker challenge to the federal guidelines for plain error), cert. denied, No. 04-1148 U.S.

5

June 20, 2005).[2]  "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'"  Id. (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002)).  "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting Cotton, 535 U.S. at 631, 122 S.Ct. at 1785).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id., 530 U.S. at 490, 120 S.Ct. at 2362-63.  Before White's sentencing hearing, the Supreme Court revisited that rule in Blakely, in the context of Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . ..  In

[2]  The Supreme Court also noted in Booker that the Court "expect[ed] reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."  See Booker, 543 U.S. at ___, 125 S.Ct. at 769.

other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis in original).

Applying these principles, the Supreme Court held that Blakely's sentence—which was enhanced under the state guidelines based on the sentencing court's additional finding by a preponderance of the evidence that Blakely committed his kidnaping offense with deliberate cruelty—violated the Sixth Amendment. Id. at ___, 124 S.Ct. at 2534-38. In a footnote, however, the Court explicitly remarked that "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id. at ___ n.9, 124 S.Ct. at 2538 n.9.

While the instant case was pending on appeal, the Supreme Court issued its decision in Booker, finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 543 U.S. at ___, 125 S.Ct. at 749. Resolving the constitutional question left open in Blakely, the Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at ___, 125 S.Ct. at 749-51. Thus, the Supreme Court determined in Booker "that the Sixth Amendment right to trial by

7

jury is violated where <u>under a mandatory guidelines system</u> a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." <u>Rodriguez</u>, 398 F.3d at 1298 (citing <u>Booker</u>, 543 U.S. at ___, 125 S.Ct. at 749-56) (emphasis in original).

Post-<u>Booker</u>, we have distinguished between two types of errors under <u>Booker</u>: (1) Sixth Amendment, or constitutional, error based upon sentencing enhancements in a mandatory guidelines system when the enhancements neither are admitted by the defendant, nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory guideline system. <u>United States v. Shelton</u>, 400 F.3d 1325, 1329-30 (11th Cir. 2005). The Supreme Court explained pre-<u>Booker</u> that, while certain Fifth Amendment due process protections apply in revocation proceedings, the Sixth Amendment right to a jury trial is not applicable. <u>See</u> <u>Johnson v. United States</u>, 529 U.S. 694, 700, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (2000) (holding that conduct giving rise to a supervised release violation "need not be criminal and need only be found by a judge under a preponderance of the evidence standard"). However, neither the Supreme Court nor this Court has addressed in a published opinion whether <u>Booker</u> applies to a sentence imposed after the revocation of supervised release

Regardless, even if we were to decide that Booker was applicable, we have determined that there is no Sixth Amendment error under Booker where the defendant has admitted to facts later used by the district court to enhance his sentence. Shelton, 400 F.3d at 1330. Because White admitted during his preliminary hearing and at sentencing that he violated a term of his supervised release by possessing drugs, which is a Grade B violation, there was no Sixth Amendment error under Booker.

In determining whether the court committed a statutory Booker error, upon finding that a defendant violated a condition of supervised release, a district court, after considering factors set forth in § 3553(a), may, among other options, revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release. 18 U.S.C. § 3583(e)(3). One of the factors a court must consider in sentencing following revocation is "the kinds of sentence and the sentencing range established for—in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .." 18 U.S.C. § 3553(a)(4)(B). Moreover, one of the policy statements in Chapter 7 of the federal guidelines—the section that governs violations of supervised release—provides recommended ranges of imprisonment applicable upon revocation. See generally U.S.S.G. § 7B1.4(a).

9

However, "[t]he Sentencing Commission has not yet promulgated any binding probation revocation guidelines; instead, the Sentencing Commission has opted for the flexibility of advisory policy statements, which are nonbinding on the courts." United States v. Cook, 291 F.3d 1297, 1301 (11th Cir. 2002).[3] A review of the sentencing transcript also does not reveal that the district court believed that White's guideline range of 6 to 12 months' imprisonment was mandatory as opposed to advisory. Accordingly, White's sentence was not increased under a mandatory guideline system, and no statutory Booker error occurred. See Rodriguez, 398 F.3d at1298; cf. Shelton, 400 F.3d at 1330-31 (holding that the district court plainly erred when it sentenced defendant under a mandatory guidelines scheme and the defendant established that this error affected his substantial rights).[4]

---

[3] Although Cook involved a revocation of probation, the statute governing the imposition of a sentence upon revocation and the Chapter 7 policy statement are the same for probation and supervised release. See 18 U.S.C. § 3553(a)(4)(B); U.S.S.G. § 7B1.4(a); see also U.S.S.G., Chapter 7, Part B, Introductory Commentary (providing that violations of probation and supervised release are treated as functionally equivalent).

[4] As persuasive authority, the Second Circuit in United States v. Fleming, 397 F.3d 95 (2d Cir. 2005), distinguished a similar Blakely/Booker challenge to a sentence following the revocation of supervised release from a Blakely/Booker challenge to a sentence following conviction, because the sentencing court in Fleming was operating under a sentencing regime that, even before Booker, was advisory with respect to revocation of supervised release. See id. at 101.

Furthermore, an error cannot meet the "plain" requirement of the plain error rule if it is not "clear under current law." United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (quotation omitted). "[W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." Id.; see also United States v. Gerrow, 232 F.3d 831, 835 (11th Cir. 2000) (concluding that we need not determine under plain-error review, in the absence of precedent from the Supreme Court or this Court, whether 18 U.S.C. § 3583(b)((2) provided the maximum term of supervised release for a defendant sentenced under 21 U.S.C. § 841(b)(1)©)). Thus, even if we were to conclude that error occurred, neither the Supreme Court nor this Court has determined whether Booker was applicable to a defendant's sentence following a revocation of supervised release, and any error was not "plain." See Aguillard, 217 F.3d at 1321.

Accordingly, we conclude that the district court did not plainly err in sentencing White upon revocation of his supervised release. We, therefore, affirm.

**AFFIRMED.**