IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2006

## STATE OF TENNESSEE v. MOHAMED MEDHET KARIM

**Direct Appeal from the Circuit Court for Wayne County**
**No. 13640    Stella Hargrove, Judge**

**No. M2006-00619-CCA-R3-CD - Filed May 16, 2007**

In November 2004, the defendant, Mohamed Medhet Karim, was indicted by a Wayne County grand jury on one count of attempted first degree murder. On August 31, 2005, following a jury trial in Wayne County Circuit Court, the jury convicted the defendant of attempted second degree murder and imposed a fine of $10,000. Following a sentencing hearing on October 13, 2005, the trial court sentenced the defendant to twelve years of incarceration as a Range I, standard offender, the maximum sentence allowed under the statute. The defendant timely filed a motion for a new trial on November 1, 2005; this motion was denied on January 4, 2006. The defendant now appeals, claiming his sentence was excessive. In making his claim, the defendant argues that two of the enhancement factors provided in Tennessee Code Annotated section 40-35-114 were improperly applied to his sentence. Concluding that application of the two enhancement factors which the defendant does not challenge is sufficient to support the twelve-year sentence imposed by the trial court, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Claudia S. Jack, District Public Defender; Robert H. Stovall, Jr. and Marilyn Holt, Assistant District Public Defenders, for the appellant, Mohamed Medhet Karim.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; T. Michel Bottoms, District Attorney General; J. Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

FACTS

This case results from a traffic stop in Wayne County on August 30, 2004. On that date, Tennessee Highway Patrol (THP) Trooper Thomas Kilpatrick pulled over the defendant's tractor

trailer for speeding. After a verbal argument, the two men became involved in a physical altercation in which the defendant was shot and during which Trooper Kilpatrick claims the defendant attempted to shoot him with the trooper's own firearm. Following the altercation, the defendant drove away but was apprehended a short time later by law enforcement officers.

The testimony of the trooper and the defendant regarding the events of that day differs markedly.[1] At trial, Trooper Kilpatrick testified that on the afternoon of August 30, 2004, while on routine patrol in Wayne County, his in-car radar indicated that a tractor trailer was traveling seventy miles per hour in a fifty-five mile per hour zone. The trooper then pulled over the truck, which was being driven by the defendant, Mohamed Medhet Karim. Trooper Kilpatrick approached the defendant, seated in the cab of his truck, and asked the defendant to turn off the engine. The defendant refused this instruction. The trooper then asked the defendant for his license, registration, and other appropriate paperwork, but the defendant instead gave Trooper Kilpatrick a handful of receipts for tolls and gasoline. The trooper then returned the receipts and explained to the defendant exactly what paperwork the defendant needed to produce. At that point, the defendant asked what he had done to necessitate being pulled over; Trooper Kilpatrick responded that he had clocked the defendant driving seventy miles per hour in a fifty-five mile per hour zone.

At this point, Trooper Kilpatrick testified, the defendant's behavior began to escalate. Trooper Kilpatrick stated that the defendant began repeatedly calling the trooper a "[f—ing] liar." The trooper then asked the defendant to stay in the truck; the defendant responded by opening the door. The trooper attempted to close the door, but the defendant pushed it open while continuing to curse him and calling him a liar. At that point, Trooper Kilpatrick testified, the defendant began pointing to his own head and saying, "I God. You get down on ground and pray to I God." Trooper Kilpatrick testified that he refused to follow the request of the defendant, who at this point was speaking in a mixture of English and a language that the trooper did not understand. The defendant then jumped in his truck, slammed the door, and spat out the window at the trooper, who was still attempting to speak to the defendant. After the defendant spat at the trooper, Trooper Kilpatrick told the defendant to stay in his truck because Trooper Kilpatrick intended to take the defendant into custody. As the officer turned from the truck to walk back to his own vehicle, which he had parked behind the defendant's truck, the defendant released his brakes, shifted his truck into reverse, and backed into the trooper's cruiser, pushing the car back some forty-seven feet.

Trooper Kilpatrick testified that after the police cruiser came to a stop, Trooper Kilpatrick ran to his car and attempted to radio for help. As the trooper attempted to contact the other officers, the defendant approached the trooper and pulled a knife out of his pocket. The trooper asked the defendant to put away his knife, but the defendant shoved the officer against his car and raised his

---

[1]Trooper Kilpatrick testified that THP officers are required to wear audio recording equipment which records conversations between troopers and motorists during traffic stops. The trooper testified that he usually wore his microphone on his belt, which he claimed allows conversations to be recorded more clearly on tape. However, most of the conversation between the trooper and the defendant was not audible on the audio tape that documented this traffic stop. Furthermore, the portion of the confrontation where the two men wrestled on the ground was out of view of the car's in-dash video camera.

knife. The trooper again asked the defendant to put away his knife, stating "don't make me shoot you," but the defendant brought the knife down, slicing through the brim of the trooper's hat. At that point, Trooper Kilpatrick unholstered his weapon and fired a shot at the defendant, hitting the defendant. The defendant stabbed at the trooper again, but the defendant hit the light bar atop the trooper's vehicle, shattering the knife. The two men then began struggling over the trooper's gun; in the course of the struggle, the weapon discharged, missing the trooper.

Then, according to Trooper Kilpatrick, the trooper's weapon fell to the ground and the two men went to the ground, struggling to gain control over the weapon. The defendant gained control of the gun; according to Trooper Kilpatrick, at that point the defendant placed the gun between the trooper's eyes, smiled at him, and pulled the trigger. The gun misfired. The defendant then hit the side of the gun, put the gun back between the trooper's eyes, and pulled the trigger a second time. Again, the gun misfired. The defendant then took the trooper's gun with him to his truck and drove off. A short time later, the defendant was apprehended by law enforcement, who also recovered the trooper's firearm.

The defendant testified that when the trooper initially approached the defendant's cab, the trooper told the defendant that he, the defendant, was in hell. The defendant, believing the trooper was being untrue, told the trooper "*sagood*." When the trooper asked what this word meant, the defendant stated that he wanted the trooper to pray. The defendant testified that he used this word repeatedly throughout the confrontation.

When the trooper told the defendant that he had clocked the defendant's vehicle traveling seventy miles per hour in a fifty-five mile per hour zone, the defendant stated that the trooper was lying because the vehicle had a governor that kept the truck from traveling above sixty-five miles an hour. The defendant denied cursing or spitting at the trooper, but he did admit backing his truck into the trooper's police cruiser.

The defendant testified that after hitting the trooper's vehicle, he exited the vehicle and walked toward the trooper, who by this time had gone back to his vehicle. The defendant stated that before he reached the trooper, he was shot. The defendant admitted that he was unsure whether Trooper Kilpatrick shot him; in fact, the defendant testified that if he had to guess, he believed someone other than Trooper Kilpatrick shot him. After the defendant was shot, the defendant kept walking toward the trooper. The defendant stated that when he and the trooper were face-to-face, the trooper drew his weapon and the defendant drew his knife, which he kept on his person for protection. The defendant admitted wrestling with the trooper and eventually gaining control over the trooper's weapon, but the defendant adamantly denied placing the gun between the trooper's eyes and pulling the trigger. Instead, the defendant stated that after grabbing the gun, he told Trooper Kilpatrick "it's over" without pointing the gun at the trooper.

At the sentencing hearing, the state introduced evidence that the defendant had been convicted in Colorado for assault on a police officer, and the defendant admitted to a conviction in New York for weapons possession. The defendant also had a history of numerous traffic infractions.

Trooper Kilpatrick testified that he was unable to pass a psychological exam required for him to resume work. He noted that he no longer leaves his home unless necessary and does not enjoy interacting with other persons. He also stated that the defendant's actions had destroyed both his professional and personal life. The trooper stated that he was taking fourteen different medications, including high blood pressure medicine, pain relievers, and psychotropic medications. He claimed that prior to the accident, he only took muscle relaxers and high blood pressure medication.

STANDARD OF REVIEW

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003).[2] As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

[T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Under the law as it existed before the 2005 amendment, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class B felony. Tenn. Code Ann. § 40-35-210(c) (2003). Tennessee's pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). The weight to be afforded an existing factor was left to the trial court's discretion so long as it complied with the purposes and principles of the 1989 Sentencing Act and the court's findings were adequately supported by the record. Id. § 40-35-210 (2003), Sentencing Commission

_____

[2] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal because the defendant chose to be sentenced according to the pre-2005 law.

Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

While the court can weigh the enhancement factors as it chooses, the court may only apply the factors if they are "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2003). These limitations exclude enhancement factors "based on facts which are used to prove the offense" or "facts which establish the elements of the offense charged." Jones, 883 S.W.2d at 601. Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the Legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Jones, 883 S.W.2d at 601.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

ANALYSIS

At the defendant's sentencing hearing, the trial court found the following enhancement factors applicable to the defendant's attempted second degree murder conviction:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
(5) The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;
(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; and
(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense;

Tenn. Code Ann. § 40-35-114(1), (5), (6), and (9). Based on these enhancement factors and an absence of mitigating factors, the court sentenced the defendant to the maximum sentence of twelve years in prison.

On appeal, the defendant contends that the court committed reversible error in applying enhancement factors (5) and (6) to the defendant's sentence. The defendant claims that the evidence was insufficient to support application of the enhancement factors to the defendant's sentence, and the defendant argues that application of the enhancement factors was inappropriate in light of the United States Supreme Court's opinion in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). However, we conclude that the presence of the two enhancement factors which the defendant does not challenge and the absence of mitigating factors are sufficient to affirm the twelve-

year sentence imposed by the trial court. Therefore, we need not address the evidentiary or <u>Blakely</u> issues raised by the defendant.

*The Two Unchallenged Enhancement Factors*

As stated above, the defendant does not challenge the trial court's application of enhancement factors (1) and (9) to his sentence. The defendant's failure to challenge these enhancement factors serves as a waiver of the issue on appeal. <u>See</u> Tenn. R. App. P. 13(b). Regardless of the waiver, a review of the record shows that the trial court properly applied the two enhancement factors to the defendant's sentence.

At the sentencing hearing evidence was produced that the defendant had previously been convicted of two criminal offenses. In 2000, the defendant was convicted in Colorado of third-degree assault on a peace officer, a Class 1 misdemeanor under Colorado law. Colo. Rev. Stat. § 18-3-204. A certified copy of this conviction was introduced into evidence. The defendant also admitted to a 2003 conviction in New York of criminal possession of a weapon in the fourth degree, a Class A misdemeanor. N.Y. Penal Law § 265.01. While the jury did not consider the evidence of the defendant's convictions, this fact is irrelevant because the United States Supreme Court has exempted proof of a defendant's prior convictions from the requirement that facts used to enhance a defendant's sentence be found by a jury beyond a reasonable doubt. <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000); <u>see also</u> <u>Cunningham v. California</u>, 127 S. Ct. 856, 868 (2007). Such convictions include those admitted by the defendant. <u>Apprendi</u>, 530 U.S. at 488. Therefore, we conclude that the trial court properly applied the "previous criminal history" enhancement factor to the defendant's sentence.

At trial and at the sentencing hearing, the defendant admitted that he possessed a knife during his altercation with Trooper Kilpatrick. Because use or possession of a deadly weapon is not an element of second degree murder, application of this enhancement factor was appropriate. <u>See</u> <u>State v. Raines</u>, 882 S.W.2d 376, 385 (Tenn. Crim. App. 1994). The fact that the knife was explicitly mentioned in the indictment does not affect application of the enhancement factor. <u>See</u> <u>State v. Henry Mitchell Dixon</u>, No. E2002-00731-CCA-R3-CD, 2003 WL 22432415, at *9-*10 (Tenn. Crim. App. at Knoxville, Oct. 22, 2003); <u>State v. Reedar Junior Robbins</u>, C.C.A. No. 6, 1991 WL 40531, at *2 (Tenn. Crim. App. at Jackson, Mar. 27, 1991). Although the defendant did not admit to using the knife during the altercation, this fact is irrelevant because "[a]s the statute clearly states, mere possession of a [deadly weapon] during the commission of a felony will support application of this factor. It is not necessary that the defendant actually use the weapon in committing the underlying felony." <u>State v. Danny Avery Stewart</u>, No. M2003-00664-CCA-R3-CD, 2004 WL 1161650, at *3 (Tenn. Crim. App. at Nashville, May 24, 2004); <u>see</u> <u>also</u> <u>State v, Christopher Jerome Taylor</u>, No. W2002-01977-CCA-R3-CD, 2004 WL 350654 (Tenn. Crim. App. at Jackson, Feb. 25, 2004). The defendant's admissions, both at trial and at the sentencing hearing, that he possessed the knife at the time of the offense were adequate proof of this enhancement factor. <u>Blakely</u> held that facts "admitted by the defendant" could be used to enhance a defendant's sentence. 542 U.S. at 303. Several federal circuit courts have held that such facts include not only those admitted by the

defendant in a guilty plea, but also those admitted at trial or at a sentencing hearing.  See United States v. Holmes, 406 F.3d 337, 364 (5th Cir. 2005) (facts admitted at trial); United States v. Ryder, 414 F.3d 908, 918 (8th Cir. 2005) (facts admitted at trial and at sentencing hearing); United States v. White, 416 F.3d 1313, 1318 (11th Cir. 2005) (facts admitted at sentencing hearing).   Therefore, we conclude that the trial court properly applied this enhancement factor to the defendant's sentence.

*Mitigating Factors and Length of Sentence*

We have previously held that "[t]he mere number of existing enhancement factors is not relevant—the important consideration [is] the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct." State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995) (citing Moss, 727 S.W.2d at 238).  In this case, we agree with the trial court that no mitigating factors were present. We conclude that the lack of mitigating factors and the presence of the two undisputed enhancement factors support affirming the trial court's imposed sentence of twelve years.

CONCLUSION

For the reasons stated above, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE