[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16642
Non-Argument Calendar

_____

D. C. Docket No. 98-00154-CR-J-20-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUBEN LEE RUSSELL EL-AMIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 28, 2009)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Ruben Lee Russell El-Amin appeals the district court's 24-month sentence imposed upon the revocation of his supervised release. For the reasons set forth below, we affirm.

**I.**

In 2001, El-Amin pled guilty, pursuant to a written plea agreement, to three counts of submitting fraudulent W-2 forms to the Internal Revenue Service, in violation of 18 U.S.C. §§ 287 and 2. On May 30, 2001, the district court entered a judgment of conviction, sentencing El-Amin to 71 months' imprisonment and 3 years of supervised release, and ordering him to pay $1,032 in restitution. The terms of El-Amin's supervised release required that he, inter alia, refrain from committing another federal, state, or local offense, report to the probation officer as directed, work regularly at a lawful occupation, and pay any restitution ordered by the court. On June 4, 2001, El-Amin filed a pro se motion for appointment of appellate counsel, but the district court denied the motion, and no direct appeal was ever taken.

In January 2008, El-Amin began serving his term of supervised release, but, in August 2008, he was arrested for violating the conditions of his supervision. The probation officer alleged that El-Amin had violated his supervision by: 1) failing to pay restitution, as ordered by the court; 2) failing to work regularly at

2

a lawful occupation; 3) failing to report to the probation office, as directed, on four separate occasions; and 4) committing new criminal conduct, namely, aggravated assault by threatening his son with a knife.

At the revocation hearing, the court first reviewed the allegations against El-Amin, noted that the aggravated-assault allegation was a Grade A violation, and explained that, if it revoked his supervised release, it could impose the statutory maximum sentence of 24 months' imprisonment for each of his three original underlying offenses, to run consecutively.

The government called Officer P.J. Bouda of the Jacksonville Police Department, who testified that, on July 14, 2008, he responded to a call from El-Amin's 18 year old son, Paul, who stated that El-Amin threatened to stab him with a knife. When Bouda arrived at the scene, Paul told Bouda that he and El-Amin had argued, they had each punched each other in the face, and, during the fight, El-Amin grabbed a knife from the kitchen and came at Paul. At that point, Paul ran back into his bedroom and locked the door, and El-Amin "started stabbing at the door trying to get into the door." Paul then climbed out of his bedroom window, called the police, and met Bouda outside the gate of the apartment complex. At the time Paul and Bouda met, Paul told Bouda that he was "afraid" of El-Amin, and he acted "very afraid" as well. Bouda later spoke with El-Amin and

3

his wife, both of whom stated that, although El-Amin had come at Paul with a knife, El-Amin did so only to scare Paul, not to harm him. After El-Amin admitted that he intended to scare Paul with the knife, Bouda placed El-Amin under arrest for aggravated assault with a deadly weapon. During Bouda's investigation of the incident, he "observed five knife marks in the bedroom door of Paul El-Amin, one of them being so strong that it actually went through the door to the other side and you could see where the knife came out the other side." When asked if he thought the knife incident might have been a prank, Bouda responded:

> By the way the victim was scared, I do not believe that it was a prank. You don't stab at someone's door for a prank. With the force that he used to stab through that door, to make it to the other side of the door with the knife, I do not believe that it was a prank. I believe that he intentionally meant to scare the victim.

Bouda clarified that, although he did believe that El-Amin meant to scare Paul, he did not believe that El-Amin actually intended to harm him.

The government called the probation officer, Joseph Pinto, and, although he testified mostly about the other six alleged supervision violations, Pinto noted that he had spoken to El-Amin's wife, who told him that El-Amin "actually went after his son . . . with a knife, but in her opinion he didn't want to physically harm him, he just wanted to scare him . . . ."

El-Amin then called his wife, Lula, who testified in a manner generally

4

consistent with the above testimony, emphasizing that El-Amin never intended to harm Paul with the knife, but rather just wanted to "chastise" or "scare" him for disciplinary purposes. Although she initially testified that El-Amin merely "nicked" Paul's bedroom door with the knife, she ultimately acknowledged that he drove the knife through the door out of frustration.

The court ultimately found that El-Amin had committed all of the alleged violations of his supervision, with the exception of one count of failing to report to the probation officer. With respect to the aggravated-assault allegation, the court rejected defense counsel's argument that El-Amin was merely attempting to discipline Paul through corporal punishment and found that:

> the defendant got into an argument with his son, Paul El-Amin, and that the defendant Ruben El-Amin went into the kitchen, after an exchange of words, grabbed a knife and started towards Paul El-Amin with the knife. Obviously Mr. Paul El-Amin was concerned and felt threatened by this knife, because he retreated through the apartment into a bedroom, locked the bedroom door. And after the door to the bedroom was locked, Mr. El-Amin took the knife and thrust it into the door at least five times, at one point actually driving the knife through the door. And it appears to me that placing somebody in fear of being stabbed with a knife is exactly what took place, and that's the crime that was proscribed by the Florida Statutes in this instance. It was enough to scare him, it was enough for him to be worried about the knife, and the knife marks in the door show that the defendant actually would have, if he possibly could, used the knife against his son.
>
> . . . . If [the] son wasn't scared, he didn't have to lock the door and go out the window and call the police. He could have said, mom, tell him to put the knife down and let me know when he does and I'll come

5

out, but that's not what happened.

After the court heard argument from the parties, and El-Amin requested leniency, the court revoked El-Amin's supervised release and sentenced him to 24 months' imprisonment for each of his three original underlying offenses, to run concurrently. The court explained its sentence as follows:

> I believe the actual guideline range as to each count is . . . 33 to 41 months, but the statutory maximum is the 24 months. . . .
>
> So that is the sentence that I'll impose in the case.[1]
>
> After he's completed the service of that sentence he'll be discharged from any jurisdiction of the Court. I don't believe that the defendant is supervisable, taking into consideration not only the underlying violations, but what's happened during the period of his supervision. . . . .
>
> Now, in imposing the sentence, I've considered the factors set forth in Title 18 of the United States Code, Section 3553(a), and the advisory guidelines and policy statements that have been issued by the United States Sentencing Commission. . . .
>
> [T]he problem with you is you blame it on everybody else other than yourself. I mean, how do you pick up a knife in a kitchen? There are so many ways to discipline an 18-year-old that lives in the house with you. The biggest thing is, hey, you're 18 and you're graduated from high school, move out next week, you're on your own. . . .
>
> Rather than pick up a knife and go running after him. You got to learn to control that.

---

[1] See U.S.S.G. § 7B1.4(b)(1) ("Where the statutorily authorized maximum term of imprisonment that is imposable upon revocation is less than the minimum of the applicable range, the statutorily authorized maximum term shall be substituted for the applicable range.").

During the course of the supervised release proceedings, El-Amin, through counsel, filed a motion to reopen the time for filing a direct appeal, arguing that his June 4, 2001 pro se motion for appointment of appellate counsel should have been liberally construed as a timely notice of appeal. The district court denied the motion.

## II.

On appeal, El-Amin first argues that the court erred by not authorizing him to file a belated direct appeal of his original sentence, repeating his argument that his pro se motion for appellate counsel should have been construed as a timely notice of appeal. However, El-Amin does not identify the source of the district court's authority to do so, and it is well-established under our case law that a supervised release revocation proceeding is not the proper forum in which to attack the underlying conviction, United States v. Francischine, 512 F.2d 827, 828 (5th Cir. 1975),[2] or the underlying sentence, United States v. White, 416 F.3d 1313, 1316 (11th Cir. 2005). Instead, the underlying conviction and sentence are presumed valid until vacated in a separate proceeding under 28 U.S.C. § 2255.[3]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[3] In this respect, we also note that, since El-Amin has previously filed a 28 U.S.C. § 2255 motion that was denied on the merits, allowing him to raise his claim in the revocation context would allow him to circumvent the statutory restrictions on filing a successive § 2255 motion. See 28 U.S.C. § 2255(h).

United States v. Almand, 992 F.2d 316, 317 (11th Cir. 1993); Francischine, 512 F.2d at 828. Accordingly, we do not address the merits of El-Amin's argument.

**III.**

El-Amin next argues that the district court erred by finding that he committed aggravated assault, a Grade A violation of supervision. "We review the district court's conclusion that appellant violated the terms of his supervised release for abuse of discretion." United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). The district court may revoke a defendant's term of supervised release if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3).

Under Florida law, "[a]n 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011. Thus, "[t]he statute requires proof of three elements: (1) an intentional, unlawful threat; (2) an apparent ability to carry it out; and (3) creation of a well-founded fear that the violence is imminent." Benitez v. State, 901 So.2d 935, 937 (Fla. Dist. Ct. App. 2005). The assault is "aggravated" if, inter alia, it is committed "[w]ith a deadly weapon without intent to kill . . . ." Fla. Stat. § 784.021(1)(a). Aggravated assault is a

third-degree felony, punishable by up to five years' imprisonment. Fla. Stat. §§ 784.021(2), 775.082(3)(d).

In this case, it is beyond dispute that El-Amin intended to threaten Paul with a knife. Although El-Amin emphasizes on appeal that he did not actually intend to harm Paul, the statute only requires that the aggressor intentionally commit a threatening act; it does not require that the aggressor actually intend to carry out the threat. With respect to the second element, it is clear that, in coming at Paul with the knife during a heated argument, El-Amin had the apparent ability to carry out his threat. Finally, in coming at Paul with the knife – and ultimately driving it through Paul's bedroom door – El-Amin created a well-founded fear in Paul of imminent violence, as evidenced by the fact that Paul retreated into his bedroom and locked the door, climbed out of his bedroom window, and called the police. Indeed, Officer Bouda testified that, upon meeting Paul at the apartment complex, Paul told him that he was afraid of El-Amin and acted accordingly. El-Amin's assertion that he was merely attempting to discipline his son in a reasonable manner is legally irrelevant, since his actions constituted aggravated assault under the law. Thus, El-Amin has not shown that the district court abused its discretion in this regard.

**IV.**

Finally, El-Amin argues that the court's sentence was substantively unreasonable. After United States v. Booker, 543 U.S. 220, 264, 125 S.Ct. 738, 767, 160 L.Ed.2d 621 (2005), we review a sentence imposed upon revocation of supervised release for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). The Supreme Court has since clarified that we review a sentence for reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, __, 128 S.Ct. 586, 591, 594, 597, 169 L.Ed.2d 445 (2007). The party challenging the sentence bears the burden of establishing that the sentence was unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Upon revoking a defendant's supervised release, the court may "impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)." Sweeting, 437 F.3d at 1107; see 18 U.S.C. § 3583(e)(3). Under § 3583(e), the relevant § 3553(a) factors that the court must consider are: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted

10

sentencing disparities; and (7) the need to provide restitution to victims. See 18

U.S.C. § 3583(e), cross referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D),

(a)(4)-(7). In Chapter Seven of the Guidelines, the Sentencing Commission

promulgated non-binding policy statements governing supervised release. See

United States v. Hofierka, 83 F.3d 357, 361 (11th Cir. 1996) (holding that the

policy statements in Chapter Seven are non-binding). We have held that because

the Chapter Seven Guidelines are advisory, it is "enough that there is some

indication the district court was aware of and considered them." United States v.

Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000).

El-Amin has not met his burden on appeal to show that his sentence was

substantively unreasonable. First, he states that the district court weighed the

§ 3553(a) factors unfairly, but he does not explain how. Similarly, El-Amin also

asserts that the district court did not take into account his individual history or the

nature of the charge against him, but, again, he does not offer any explanation.

In any event, the district court expressly stated that it considered "not only

the underlying violations, but what's happened during the period of his

supervision," which, notably, consisted of six separate supervised release

violations in a period of less than eight months. In this respect, the court

specifically discussed the aggravated-assault incident, emphasizing that there were

a number of ways to discipline an 18 year child other than threatening him with a knife. Moreover, the court expressly stated that it had considered the statutory factors, the advisory guidelines, and the policy statements issued by the Sentencing Commission. Accordingly, El-Amin has not met his burden, and we therefore affirm his sentence.

**AFFIRMED.**