NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2014
Decided July 16, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1633

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:01-cr-40036-JPG-5 |
| DARIUS D. JOHNSON, *Defendant-Appellant.* | J. Phil Gilbert, *Judge.* |

## O R D E R

Darius Johnson violated the conditions of his supervised release and was ordered to serve another 12 months and 1 day in prison. That term is below the policy-statement reimprisonment range of 21 to 27 months, and within the range of 8 to 14 months that Johnson had advocated. On appeal Johnson principally argues that the district court should have revisited the career-offender classification assigned to him when he was sentenced

for the underlying crime even though, as a matter of discretion, the district court disregarded Johnson's career-offender status in selecting a term in the range that he advocated. We affirm the judgment.

Johnson was sentenced in 2001 to 292 months' imprisonment for conspiring to distribute crack cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1). He was classified as a career offender based on his Illinois convictions for aggravated battery and reckless discharge of a firearm, bumping his criminal-history category from III to VI. *See* U.S.S.G. § 4B1.1(b). After two sentence reductions—the first for substantial assistance and the second under a retroactive amendment to the drug-quantity table, *see* U.S.S.G. Supp. to App. C, Vol. III, 226–31 (2008) (Amendments 706 and 713)—Johnson was released in December 2012 and began serving his 5-year term of supervised release.

In early 2014, Johnson's probation officer petitioned to revoke his supervised release based on eight violations: possessing marijuana, frequenting a place where controlled substances were being used, skipping substance-abuse treatment, using alcohol to excess, committing the crimes of "Improper Traffic Lane Usage" and "False Statements," failing to submit monthly reports to the probation officer, lying to the probation officer, and continuing to associate with felons. At the revocation hearing the district court explained the rights Johnson was waiving by admitting these violations and ensured that no one had induced his admissions.

The parties agreed that Johnson's most serious conduct was a Grade B violation, *see* U.S.S.G. § 7B1.1(a)(2), but disagreed over his criminal-history category. Johnson argued that the correct category was III because his conviction for reckless discharge of a firearm is not a crime of violence under post-sentencing clarifications in the law. *See United States v. Gear*, 577 F.3d 810, 812–13 (7th Cir. 2009). Based on a criminal-history category of III, his policy-statement reimprisonment range would be 8 to 14 months. *See* U.S.S.G. § 7B1.4(a). The government acknowledged that Johnson would not be a career offender if sentenced today, but argued that the district court could not revisit his criminal-history category in the context of a revocation proceeding. The court sided with the government and concluded that the reimprisonment range was 21 to 27 months based on a criminal-history category of VI. *See* U.S.S.G. § 7B1.4(a).

That said, the district court noted that "today [Johnson] would not be a career offender." The court also recognized that Johnson had spent more time in prison under the career-offender provision than he might have if sentenced today, but explained that Johnson still was required to follow his conditions of supervision. The judge chose a prison

term of 12 months and 1 day, noting that a term of that length would make Johnson eligible for good-time credit. The court added 48 more months of supervised release, with the first 6 months to be served in a residential reentry center and another 6 months of a curfew enforced with electronic monitoring.

On appeal Johnson maintains that the district court miscalculated his criminal-history category by declining to revisit his career-offender status in light of our changed view about whether the Illinois offense of reckless discharge of a firearm is a crime of violence. He thus argues that he should not have been tarnished with the label "career offender" at his revocation hearing. The government counters that a revocation is the wrong proceeding to challenge a mistaken classification as a career offender.

The government is correct. As the revocation policy statements explain: "[T]he criminal history category to be used … is the category determined at the time the defendant originally was sentenced to the term of supervision. The criminal history category is not to be recalculated …." U.S.S.G. § 7B1.4 cmt n.1; *see United States v. McClanahan*, 136 F.3d 1146, 1149–50 (7th Cir. 1998). Though Johnson possibly could have challenged his career-offender status in a motion under 28 U.S.C. § 2255, *see Brown v. Caraway*, 719 F.3d 583, 587–88 (7th Cir. 2013); *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011), he does not cite, nor have we found, any authority allowing a district court to revisit a defendant's criminal-history category in the context of a revocation proceeding. Indeed, we have made clear that challenges to the underlying sentence cannot be raised in a revocation proceeding: "The proper method for challenging a conviction and sentence is through direct appeal or collateral review, not a supervised release revocation proceeding." *United States v. Flagg*, 481 F.3d 946, 950 (7th Cir. 2007); *accord United States v. Miller*, 557 F.3d 910, 913 (8th Cir. 2009); *United States v. Willis*, 563 F.3d 168, 170 (5th Cir. 2009); *United States v. White*, 416 F.3d 1313, 1316 (11th Cir. 2005); *United States v. Warren*, 335 F.3d 76, 78 (2d Cir. 2003). Moreover, the judge recognized that "today [Johnson] would not be a career offender" and thus presumed a "range of 8 to 14 months" (the range that would have applied if Johnson wasn't a career offender), so any possible error would be harmless. *See United States v. Foster*, 701 F.3d 1142, 1157–58 (7th Cir. 2012).

Johnson next asserts that the district court failed to adequately address his argument in mitigation that he suffers post-traumatic stress disorder (PTSD) from two shootings when he was 18 and 21, leading him to make bad decisions. He also contends, in cursory fashion, that the judge did not provide an adequate explanation for the term of incarceration and additional term of supervised release.

But when the district judge asked if the parties required "[a]nything further" at the end of the hearing, defense counsel said no. Defendants waive any claim that the judge failed to address a principal argument in mitigation by telling the judge that they do not need elaboration. *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014); *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013). In any event, arguments based on personal characteristics such as mental-health issues "must offer a cogent argument as to why that characteristic should be deemed a mitigating rather than aggravating factor," *Donelli*, 747 F.3d at 940, and Johnson did not explain why poor decision-making should weigh in his favor. The judge's explanation that Johnson repeatedly violated his terms of supervised release and needed to learn how to make better decisions reflects adequate consideration of his personal characteristics and the nature of his violations. *See* 18 U.S.C. § 3553(a)(1); *United States v. Clay*, — F.3d —, 2014 WL 2214212, at *3 (7th Cir. May 29, 2014); *United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008).

Johnson last briefly argues that the district judge did not adequately justify two conditions of supervised release: the six months in a residential reentry facility and the six additional months on electronic monitoring. He contends that the court did not give an adequate explanation for these conditions and in a letter of supplemental authority cites our recent decision in *United States v. Siegel*, — F.3d —, 2014 WL 2210762 (7th Cir. May 29, 2014), to challenge the condition that he "pay all or part of the costs of participation" in electronic monitoring because the judge did not specify that the extent of his contribution would be set based on his ability to pay.

But the reason for both of these conditions is shown from the record. Johnson's lawyer explained in the district court that he "lives in a housing program sponsored by the Southern Illinois Coalition For The Homeless" and would lose his spot in the program if he went to jail. Johnson's lawyer noted at oral argument that he might have other potential places to stay, but a residential reentry program reasonably addresses his need for housing immediately after release. And Johnson's lawyer was the first to suggest electronic monitoring, asking the court to schedule "a review hearing in six months and allow[] my client to be released and would consider perhaps electronic monitoring as a part of that." Given the discussion of Johnson's poor decision-making, his own lawyer's request for electronic monitoring was logical and the judge reasonably included it as part of his supervision. To the extent that Johnson challenges the cost-sharing provision, he cannot raise new arguments in a letter of supplemental authority. *See* FED. R. APP. P. 28(j); *United States v. Sanders*, 708 F.3d 976, 985 (7th Cir. 2013).

AFFIRMED.