# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 4, 2019

Decided May 24, 2019
Reissued August 19, 2019

No. 18-3026

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES DUCKETT,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00120-1)

*Rosanna M. Taormina*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Elizabeth Gabriel*, Assistant U.S. Attorney, argued the cause for appellee. With her on the briefs were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Stephen J. Gripkey*, Assistant U.S. Attorneys.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  James T. Duckett appeals his latest sentence of 24 months' imprisonment.  He claims that his sentence should have been lower and that the district court did not sufficiently explain why it was imposing a term of imprisonment greater than the Sentencing Guidelines range.

We have framed the issue in terms of Duckett's "latest sentence" because Duckett, now in his mid-50s, has been in nearly continuous custody for one offense or another since the 1980s.  In his teens he began committing petty crimes and the older he grew the more violent he became.  He moved on to distributing illegal drugs, stabbing, robbing, attempting murder, and murdering.

In the District of Columbia area during a nine-year period beginning when Duckett was 18 years old, he served time for simple assault, attempted petty larceny, attempted robbery, armed robbery, theft, and attempted distribution of cocaine. After his release on parole, he violated the terms of his release. Imprisoned again, this time in Virginia, Duckett stabbed another inmate repeatedly – in the chest and in the back – with a "shank," and continued his onslaught even as a prison guard intervened to protect the victim.  A jury found Duckett guilty of assault with intent to murder, assault causing serious bodily harm, and possession of contraband (the shank).  The court sentenced him to 20 years' imprisonment.

In 1994, while serving this sentence at the Lewisburg, Pennsylvania, federal penitentiary, Duckett stabbed another inmate to death. The Bureau of Prisons transferred him to "ADX" (Administrative Maximum) Florence, Colorado, by some accounts the nation's most secure federal prison.

At ADX Florence, Duckett assisted another inmate – Dominic Stewart – in attacking prisoner Gregory Joiner and beating him to death. A federal grand jury in Colorado indicted Duckett and Stewart for second degree murder and assault resulting in serious bodily injury. Stewart faced an additional first degree murder charge for the crime.

Duckett negotiated a cooperation agreement with the prosecution, pursuant to which he pled guilty to the assault charge and testified against Stewart. In return, the prosecutor filed a motion for a downward sentencing departure. The federal district court in Colorado concurred and sentenced Duckett to 42 months of imprisonment, followed by three years of supervised release. Duckett started serving this period of supervised release in October 2014.

This brings us to the events leading to Duckett's latest sentence of 24 months' imprisonment. Duckett moved back to Washington, D.C. in the fall of 2014. Chief Judge Howell of the federal district court here assumed jurisdiction over his compliance with the terms of his supervised release from the sentence imposed in Colorado.

In December 2014, shortly after his arrival here, he was arrested for assault, aggressive panhandling, and carrying a prohibited weapon. In April 2015, while detained, he assaulted a prison guard. In May 2015, the D.C. Superior Court sentenced him to 6 months' probation for each of these offenses.

In July 2015, Duckett assaulted a special police officer while in possession of a prohibited weapon. On his plea of guilty, the D.C. Superior Court sentenced him to 180 days' imprisonment followed by three years of supervised probation.

In April 2016, Chief Judge Howell revoked Duckett's supervised release on his Colorado sentence because of these two crimes. The Chief Judge sentenced him to 6 months' imprisonment followed by 24 months of supervised release.

Duckett finished his prison term in August 2016 and reentered supervised release. Once again he violated a condition of his release by leaving the halfway house to which he had been assigned. Again Chief Judge Howell revoked Duckett's release and sentenced him to another 6 months' imprisonment followed by 12 months of supervised release.

After serving this 6 month prison term, Duckett returned to society and again began violating the conditions of his release. He tested positive for cocaine in August 2017. About the same time, he refused to provide a urine sample for a drug test at the halfway house. A staff member informed him that if he did not comply he would be sent back to prison. In response, Duckett told the staff member that he would "stretch him out" – that is, punch him in the head to render him unconscious – before he would be sent back to prison. In response to Duckett's threat, the halfway house evicted him. A few months later Duckett attempted to steal a television from a Walmart store in the District. On his plea of guilty to second-degree theft, the Superior Court sentenced him to 30 days' incarceration, consecutive to any other sentence. The Superior Court also revoked his probation, which triggered one additional year of imprisonment for him.

There matters stood in April 2018 when Duckett appeared in federal court for a revocation hearing, his third such hearing in this district in two years.  Duckett conceded that he had again violated the terms of his release.  Each of his current violations, in combination with his criminal history category of VI, carried an advisory Sentencing Guidelines range of 8 to 14 months, and a statutory maximum of 24 months under 18 U.S.C. § 3583(e)(3).  The probation office and the prosecution recommended a sentence of 24 months' imprisonment consecutive to Duckett's Superior Court sentence.

Chief Judge Howell agreed with the recommendations and orally announced that Duckett was to serve the statutory maximum sentence of 24 months' imprisonment running consecutively to the 13 months ordered by the Superior Court.  After so stating, the Chief Judge asked Duckett's counsel whether there was any objection.  In response, the attorney from the Public Defender's office said nothing about the adequacy of the Chief Judge's explanation for imposing an above-Guidelines sentence.

Even so, now on appeal the Public Defender presents the question whether the Chief Judge gave a sufficient reason for Duckett's sentence.  Under 18 U.S.C. § 3553(c)(2), the sentencing judge must provide "the specific reason" for a sentence outside the Guidelines range.  Given the absence of an objection here, Duckett has the burden of showing "plain error." *See* Fed. R. Crim. P. 52(b).

A "plain error" is a glaring or obvious judicial mistake of fact or law that adversely "affects substantial rights" but was "not brought to the court's attention." *Id.*  In most cases even an obvious error will not constitute a "plain error" unless it prejudiced the defendant – that is, unless it "affected the outcome of the district court proceedings." *United States v.*

*Olano*, 507 U.S. 725, 734 (1993). And even though the defendant carries his burden of showing that the district court committed a "plain error" as so defined, that will not be enough. "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *Id.* at 735 (alteration in original); *see also Puckett v. United States*, 556 U.S. 129, 142 (2009) (noting "that a '*per se* approach to plain-error review is flawed'") (quoting *United States v. Young*, 470 U.S. 1, 17, n.14 (1985)).

Here it is apparent why defense counsel did not object to the Chief Judge's explanation of Duckett's 24-month sentence. Duckett "and anyone else present at his sentencing hearing[] must have understood why the district court imposed an above-Guidelines sentence of" 24 months. *United States v. Jackson*, 848 F.3d 460, 462 (D.C. Cir. 2017).

Needless to say, Chief Judge Howell was quite familiar with Duckett. This was the third time in two years he stood before her in a revocation hearing. In the Colorado sentencing and in the two previous revocation hearings, Duckett received the benefit of below-Guidelines sentences. He and his counsel therefore should have anticipated that an above-Guidelines sentence could be coming. The Sentencing Guidelines indicate that courts may impose lengthier sentences when prior sentences were lenient. *See* U.S.S.G. § 7B1.4, application note 4 (advising that when "the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), . . . an upward departure may be warranted"). At the hearing Duckett's counsel acknowledged that this time around the "Court is going to impose a significant sanction." Hr'g Tr. 4/20/18 at 22.

As the prosecutor argued, and as the Chief Judge concluded, Duckett's three violations triggering his latest revocation

proceeding were only part of his story.  The prosecutor gave this summary, which was not all-inclusive: Duckett "shank[ed] someone in prison"; he participated in the deadly beating of an inmate; he was arrested on nine separate occasions while under supervision; he was arrested and convicted of assaulting a police officer while under supervision in this case; and so forth.  Hr'g Tr. 4/20/2018 at 12.  It hardly needs explaining to understand why the prosecutor and the probation office urged a 24-month above-Guidelines sentence to protect the community.

Chief Judge Howell reviewed and explained Duckett's "very extensive" and "horrible" criminal record, as she put it, and his repeated violations of the terms she and other judges had imposed on him during his brief periods out of prison.  Hr'g Tr. 4/20/2018 at 23.  She told Duckett that she had given him "opportunities in the past"; that he did not take advantage of those opportunities; and that now the court's responsibility was "to protect the public from future crimes by you."  Hr'g Tr. 4/20/2018 at 29–30.  All of this sufficiently explained the Chief Judge's decision to send Duckett back to prison for 24 months. *See Rita v. United States*, 551 U.S. 338, 356–59 (2007); *see also United States v. Ransom*, 756 F.3d 770, 774, 776 (D.C. Cir. 2014).  At least for those 24 months Duckett would be off the streets, unable to "stretch out" any member of the public, or to steal television sets, or to assault police officers, or to commit other forms of mayhem.

Duckett also claims that the Chief Judge relied on mistakes of fact.  The supposed mistakes dealt with the extent of Duckett's prior educational and vocational training, substance abuse and mental health treatment, and anger management counseling.  There is a mistake here but it is on Duckett's part. The Chief Judge did not justify the sentence with reference to Duckett's treatment or lack thereof in the past.  Treatment came

up only once, when the Chief Judge asked whether Duckett's drug treatment had been successful.

Duckett's final claim of "plain error" is that the calculation of his criminal history was in error. The federal district court in Colorado, in 2012, determined that Duckett was in Category VI because he was a career offender. The court identified two predicate offenses for career-offender status under U.S.S.G. § 4B1.1: a 1989 conviction for attempted distribution of cocaine and a 1993 conviction for assault with intent to commit murder.

Duckett argues the calculation was in error in light of this court's intervening decision in *United States v. Winstead*, 890 F.3d 1082, 1090–92 (D.C. Cir. 2018), holding that attempted drug distribution does not qualify as a predicate offense for career-offender status. We are skeptical of this argument for several reasons. One problem is that *Winstead* is the law of this circuit, not the law of the Tenth Circuit where Duckett was originally sentenced. Another problem is that the Guidelines instruct courts in revocation proceedings to use the criminal history category "determined at the time the defendant originally was sentenced to the term of supervision," U.S.S.G. § 7B1.4, application note 1, which is what Chief Judge Howell did without objection from defense counsel. *See United States v. Jones*, 690 F. App'x 336, 337 (6th Cir. 2017) (unpublished opinion); *United States v. Johnson*, 570 F. App'x 611, 612 (7th Cir. 2014) (unpublished order). The third problem with Duckett's argument is that if his attempted drug distribution is disregarded, his armed robbery conviction in 1984 would be substituted, thus placing him in the same criminal history category. We need not resolve these issues, however. Even if there was an error and even if the error was obvious, it did not amount to a "plain error" because there is no "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Mack*, 841 F.3d

514, 522 (D.C. Cir. 2016) (quoting *Molina–Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). Dropping Duckett's criminal history category from VI to V would cause only a decrease in the revocation Guidelines range from 8-14 months to 7-13 months. Given Chief Judge Howell's reasons for imposing the maximum 24 month sentence, that one-month difference would not have mattered. *See Molina-Martinez*, 136 S. Ct. at 1346–47.

We have considered and rejected Duckett's remaining arguments.

*Affirmed.*