[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13882

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW WILLIAM PEDDICORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20208-DMM-1

_____

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

The night of April 7, 2022, began for Matthew Peddicord with a minor fender-bender. It ended with an arrest for knowingly possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. section 922(g)(1)—an offense for which he was ultimately convicted on July 27, 2022. The district court sentenced him to sixty-months' imprisonment followed by three years of supervised release.

Peddicord admitted he knew he was a felon on the night of the incident that brought about his arrest, and he admitted that the firearm he possessed had traveled in interstate commerce. He insists, however, he had no idea he was sitting on the gun, and so he did not knowingly possess it. To prove he did know he was sitting on the gun, because he knew what a gun looks and feels like, the district court permitted the government to introduce into evidence Peddicord's 1999 conviction for first-degree armed robbery.

Peddicord appeals his conviction, arguing that the district court abused its discretion under Federal Rule of Evidence 404(b) when it admitted his twenty-three-year-old armed robbery conviction. Because the probative value of the prior conviction was not substantially outweighed by its prejudicial effect, we affirm.

## FACTUAL BACKGROUND

In April 2022, Peddicord lightly rear-ended a car stopped at a red light in Miami.  Two teenage girls were in the car, and when they stepped out to look at the damage to their car, they saw Peddicord still sitting in the driver's seat of the truck.  They approached him, and he implored them not to call the police.  The girls then noticed a police car was passing by, so they flagged it down and asked the officer for help.  At that point, Peddicord began acting "weird," screaming, ripping his shirt, and trying to climb out of the truck's window.

The officer observed Peddicord flailing his arms inside his vehicle and, believing he was suffering from a drug overdose or some other medical emergency, called Fire Rescue for medical assistance.  In the meantime, the officer instructed Peddicord to exit the truck, but Peddicord did not initially comply.  He continued to flail and scream until he eventually left his seat.  The officer noticed that there was a holstered firearm in the middle of the driver's seat.  The officer removed the gun, took it out of its holster, and saw that it contained a fully loaded magazine.  Fire Rescue arrived soon after and administered a medicine used to treat a person who is suffering from an opioid overdose.

The government later arrested Peddicord at his girlfriend's home, where he lived.  Peddicord's girlfriend said that, upon arriving home on the night of the incident, she mistakenly left her gun in her truck on the seat.  She said that Peddicord took her truck the

night of the car accident without her knowledge or permission while she was taking a shower.

## PROCEDURAL HISTORY

A federal grand jury charged Peddicord with knowingly possessing a firearm and ammunition as a felon in violation of section 922(g)(1).  He pleaded not guilty.

The sole question presented to the jury was whether Peddicord knowingly possessed the firearm found in his seat that night.  To show that Peddicord knew "what a firearm looks and feels like," and therefore knew he was sitting on the gun, the government filed a notice under Rule 404(b) that it intended to introduce into evidence Peddicord's 1999 Washington conviction for first-degree armed robbery.

Peddicord moved to exclude the conviction, arguing that its prejudicial effect outweighed its probative value because the prior conviction was too remote, it was violent in nature, and the government didn't need the conviction evidence.  He proposed instead stipulating that he was convicted of a crime involving a firearm in 1999.  The government responded that the robbery's special verdict finding that Peddicord used a firearm demonstrated his particular knowledge of firearms.

The district court denied Peddicord's motion because the government "need[ed]" the conviction to show knowledge and respond to Peddicord's claim that "he didn't know the gun was there" in his seat.  The government, the district court explained, could introduce the first page of Peddicord's conviction but must

exclude details about the robbery itself as well as Peddicord's sentence and restraining order.

At trial, the district court gave limiting instructions regarding the prior conviction three times:  at the outset of the trial, right before admitting the conviction into evidence, and while instructing the jury before deliberations.  Before admitting the prior conviction and while instructing the jury before deliberations, the district court gave a pattern instruction, informing the jury that it was about to hear or had just heard:

> evidence of acts allegedly done by the defendant that may be similar to those charged in the indictment. But, which were committed on other occasions. You must not consider this evidence to decide if the defendant engaged in the activity alleged in the indictment.  But, you may consider this evidence to decide whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment.

## STANDARD OF REVIEW

We review for an abuse of discretion a district court's admission of a prior crime under Rule 404(b).  *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

## DISCUSSION

We have used the following three-part test to determine if prior bad act evidence is admissible under Rule 404(b):  (1) is it

relevant to an issue other than the defendant's character; (2) is it established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) is the probative value of the evidence substantially outweighed by its undue prejudice, as required by Rule 403. *See United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015) (quoting *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010)).

Peddicord admits that he satisfied both the first and second prongs. As to the first prong, Peddicord put his intent at issue when he pleaded not guilty to knowingly possessing the firearm. *See United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (stating that the defendant's "plea of not guilty, without an accompanying affirmative removal, made his intent a material issue"). He satisfied the second prong because he was convicted of the armed robbery. *See United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) ("The second element was also met because [the defendant] was convicted of the prior act . . . ."). He insists, however, that the government did not satisfy the third prong because the probative value of the conviction was outweighed by its undue prejudice.

To determine whether the probative value of evidence outweighs its prejudicial effect, courts consider "the circumstances of the extrinsic offense." *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). "[I]t cannot be said that a district court abused its discretion" if it admitted extrinsic evidence after considering "the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses, and whether

it appeared at the commencement of the trial that the defendant would contest the issue of intent." *Id.* Courts may also consider whether the government "had . . . need" of the evidence to prove the defendant's intent. *See United States v. Edouard*, 485 F.3d 1324, 1344–45 (11th Cir. 2007).

Here, the district court did not abuse its discretion by admitting Peddicord's prior conviction at trial. The conviction showed that Peddicord had experience using a firearm, and it was relevant to Peddicord's knowledge that he was sitting on a gun while he drove a vehicle for twenty minutes. "[T]he fact that [a defendant] knowingly possessed a firearm . . . on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake." *United States v. Jernigan*, 341 F.3d 1273, 1281–82 (11th Cir. 2003) *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019); *see also United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (finding no abuse of discretion where the district court admitted evidence that the defendant "knowingly possessed a firearm at another point in time" to "satisfy the mens rea element of [knowing possession of a firearm]").

Peddicord argues, first, that introducing his prior conviction created a substantial risk of unfair prejudice, and second, that the conviction's probative value was minimal at best. As to prejudice, Peddicord contends that a jury would too easily misinterpret the conviction as evidence of his general propensity to commit crimes, that the violent nature of the 1999 conviction overshadows the

non-violent nature of the crime he faces here, and that the district court's "boilerplate" limiting instructions failed to adequately temper the potential prejudice. As to the conviction's probative value, he asserts that the conviction was too old, he was only twenty years old when he committed the crime, and the crime was factually dissimilar to the felon-in-possession conviction he faces here because of the old conviction's violent nature.

We disagree. First, the prior conviction and the felon-in-possession conviction both involve the knowing use of a firearm. As already discussed, our prior precedent has concluded that such evidence is probative to show a defendant's knowledge. *See Jernigan*, 341 F.3d at 1281–82; *see also Taylor*, 417 F.3d at 1182.

Second, as to the amount of time that passed between the prior and current convictions, we have previously upheld the admission of Rule 404(b) evidence that occurred fifteen years before the charged offense. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995). Although "temporal remoteness depreciates the probity of the extrinsic evidence," *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978), we have no bright-line rule for when a district court may not admit a prior crime for being too remote. *See Matthews*, 431 F.3d at 1311. Any bright-line rule would be "of dubious value" because the inquiry is "so fact-specific." *Id.* (quoting *United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991). Moreover, Peddicord was incarcerated for thirteen of the twenty-three years that passed between the prior and current convictions, which diminishes the "significance" of the length of time that passed

between the prior conviction and the instant conviction. *See United States v. LeCroy*, 441 F.3d 914, 926 (11th Cir. 2006) ("[I]n this case, the significance of the ten-year time period between the previous and instant crimes is diminished because [the defendant] was incarcerated for most of that time . . . ."); *see also United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013) (A "prior crime need not be very recent, especially where a substantial portion of the gap in time occurred while the defendant was incarcerated.")

And third, Peddicord clearly contested the issue of his intent. His knowing possession was the central question in this case, so the conviction was probative to addressing that question. *See Jernigan*, 341 F.3d at 1281–82. Because there was no forensic evidence linking Peddicord to the gun, the prior conviction was neither "needless[]" nor "cumulative." Fed. R. Evid. 403.

Peddicord's remaining prejudice arguments did not substantially outweigh the probative value of the prior conviction. First, his young age at the time of the prior conviction did not make it less likely that he knew how a firearm felt in his hand or in the driver's seat of his vehicle. *See Matthews*, 431 F.3d at 1312 n.15 ("Nor do we find any merit in the claim that [the defendant] was too young at the time of the 1991 incident for the prior act to be probative of intent.").

Second, a district court's limiting instructions will typically "mitigate[]" any "unfair prejudice possibly caused by admitting evidence" of a prior conviction. *Edouard*, 485 F.3d at 1346; *see also United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008) ("[T]he

'scalpel' of an appropriate limiting instruction at the time [a prior conviction is] admitted can reduce the risk of inherent prejudice . . . .").  Here, the district court, using a pattern instruction, instructed the jury three times that it could not use Peddicord's prior conviction as evidence of a propensity to commit crimes.  We have held that a district court does not abuse its discretion in giving the pattern instructions to a jury, and we presume that juries follow their instructions.  *See United States v. Dominguez*, 661 F.3d 1051, 1072–73 (11th Cir. 2011) ("The district court gave the pattern instruction on similar act evidence and did not abuse its discretion in refusing to revise this instruction."); *see also United States v. Wilson*, 149 F.3d 1298, 1302 (11th Cir. 1998) ("The jury is presumed to have followed these instructions.").

In the end, Peddicord has failed to demonstrate that the prejudicial effect of his prior conviction substantially outweighed its probative value.  He also failed to show how the district court abused its discretion by allowing the government to admit his prior conviction.  Because "the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice," we are "loathe to disturb the sound exercise of discretion in these areas." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013).

**AFFIRMED.**